BROCKENBROUGH v. BOARD OF WATER COMMISSIONERS
OF CHARLOTTE.

(Filed November 1, 1903).

1. MUNICIPAL CORPORATIONS — *Water Companies — Taxation —*
*Bonds—Mortgages—Cities and Towns—Acts (Private) 1881, ch.*
*40—Acts 1897, ch. 68—Acts (Private) 1899, ch. 271—Acts (Pri-*
*vate) 1903, ch. 196—Const. N. C., Art. II, sec. 14—Const. N. C.,*
*Art. VII, sec. 7.*

Acts 1903, ch. 196, authorizing the board of water commissioners
of the city of Charlotte to issue bonds for the improvement of
its water-works, do not constitute the bonds a debt against the
city.

2. MUNICIPAL CORPORATIONS — *Taxation — Bonds — Cities and*
*Towns—Acts 1903, ch. 196—Water Companies.*

Under acts 1903, ch. 196, and acts 1899, ch. 271, water-works owned
by a board of water commissioners are held by the said board
in trust for the use of the city and are not subject to be sold
for the indebtedness of the city.

3. MUNICIPAL CORPORATIONS — *Taxation* — *Bonds* — *Cities and Towns—Acts (Private) 1881, ch. 40—Acts 1897, ch. 68—Acts 1903, ch. 196—Water Companies.*

Acts 1903, ch. 196, do not impair any rights of the holders of bonds issued pursuant to the provision of the acts of 1881, ch. 40, and acts 1897, ch. 68.

4. MUNICIPAL CORPORATIONS — *Taxation* — *Bonds* — *Cities and Towns—Water Companies.*

The legislature has the power to authorize a board of water commissioners to issue bonds for water-works and execute a mortgage to secure the same.

5. MUNICIPAL CORPORATIONS — *Taxation* — *Bonds* — *Cities and Towns—Water Companies.*

Under acts 1903, ch. 196, the board of water commissioners of the city of Charlotte is empowered to pledge the rents and tolls accruing from the operation of the water-works to the purposes specified in the act.

ACTION by G. H. Brockenbrough and others against the Board of Water Commissioners of the city of Charlotte, heard by *Judge Walter H. Neal,* at October Term, 1903, of the Superior Court of MECKLENBURG County. From a judgment for the defendant the plaintiffs appealed.

*Clarkson & Duls,* for the plaintiffs.
*Burwell & Cansler,* for the defendant.

CONNOR, J. This action is prosecuted by the plaintiffs, citizens and taxpayers of the city of Charlotte and members of the Board of Aldermen of said city against the defendants, Board of Water Commissioners, of said city, for the purpose of restraining and perpetually enjoining a proposed issue of bonds and the execution of a mortgage on the property held and owned by said board, and pledging the rents and tolls derived

from the operation thereof to secure the payment of the said bonds and the interest thereon.

The facts material to the decision of this appeal, as set forth in the complaint and admitted by the demurrer, are: On the 13th day of March, 1897, in pursuance of authority vested in it by chapter 40 of the Private Laws of 1881, and by chapter 68 of the Public Laws of 1897, the Board of Aldermen purchased the plant, property, franchises, easements, privileges and appurtenances of the Charlotte City Water-works. Pursuant to authority vested in it by said acts of the General Assembly and by virtue of the approval of a majority of the qualified voters of said city, ascertained at an election duly held for that purpose, it issued and sold two hundred and fifty thousand dollars of the bonds of the city, and applied the funds received therefrom to the payment of the purchase-money of said property and in making extensions and improvements thereto.

At the session of 1899, chapter 271, Private Laws, the General Assembly duly passed an act whereby E. T. Cansler, R. J. Brevard, W. C. Dowd and R. R. Jordan were constituted a Board of Water Commissioners for the city of Charlotte, of which the Mayor of said city was made *ex officio* chairman. Provision was made for filling vacancies in said board. Said board was declared to be a corporation under the corporate name of the Board of Water Commissioners of the city of Charlotte, with power to sue and be sued, to hold real estate, and to enjoy the usual privileges of a corporation. That all acts and doings of said board within the scope of their duty or authority are declared to be obligatory upon and be in law considered as if done by the Board of Aldermen of the city of Charlotte; the said board was empowered for and in the name of the Board of Aldermen of the city of Charlotte to take and hold the land, real estate, rights, franchises and property of every kind now

owned by said Board of Aldermen, or that may hereafter be purchased for the purpose of operating and maintaining a system of water-works for the said city; and have power to acquire such additional property and make such additional improvements thereto as should be necessary to supply the city of Charlotte with a sufficient supply of good and wholesome water. Power was given to condemn land and water rights if necessary to extend said system of water-works. The board was given power to regulate the distribution and use of water and to fix a price for the use thereof, the time of payment, etc. The property held by said board was exempt from taxation. The board was given power to collect all rents, water rates, etc., and required to keep an account thereof— and after paying the expense of operating the plant or system of water-works under their control, including cost of such improvements as was deemed necessary, the net balance they were required to pay over to the Treasurer of said city. It was provided that said Board of Aldermen out of such net balance should first pay the interest upon such of the bonds of the city of Charlotte as were sold for the purpose of raising money to purchase said system of water-works, and the balance remaining to constitute a sinking fund to meet the payments of said bonds at maturity.

The members of said board organized under and pursuant to the provisions of said Act of 1899, and the Board of Aldermen pursuant thereto turned over to the said Board of Water Commissioners the said water-works system and plant; improvements and extensions, for the purpose and in accordance with the terms and provisions of said act, and in accordance therewith the said board holds the real estate, rights, franchises and property so turned over to them. Said board has since acquired additional property and made additional improvements and are endeavoring to acquire still more property and make further improvements, all of which

are necessary to furnish said city and its inhabitants with a sufficient supply of good, wholesome water. The population of said city was at the last census 19,000 and now exceeds 25,000 people. Said city has expended large sums in establishing and maintaining, and now maintains, a paid fire department for the protection of the property of the citizens of said city. It also maintains a system of sewerage made necessary for the proper drainage of its streets and for the preservation of the public health. Said system of fire protection and sewerage require large quantities of water from said water-works system for their use, operation and efficient maintenance. The city has found it necessary to and has laid many miles of sewer and water-pipes and purchased the necessary implements, tools, etc., for the operation thereof, all of which are necessary for the protection of the property and health of said city and its inhabitants. That the present water supply is inadequate to meet the demands of public and private consumers and an efficient operation of said plans. That one of the water-sheds of said city from which it derived a considerable portion of its water supply has become thickly populated and occupied by manufacturing plants, making it advisable to discontinue the use of water from that source for public or domestic purposes. That neither the said city nor the Board of Water Commissioners have any funds on hand which can be used to purchase necessary real estate, machinery and other property to adequately equip its system of water-works to supply the wants and needs of the city or its inhabitants. That it will require the expenditure of at least one hundred and fifty thousand dollars for said purpose. That to enable the said Board of Water Commissioners to properly equip and maintain said water-works system, sufficient to supply the city with water necessary for municipal purposes at a moderate cost to said city, it is necessary that the Board of Water Commissioners shall

equip and maintain a water system of sufficient capacity to furnish all the inhabitants of said city desiring to use the same a sufficient quantity of pure, wholesome water for domestic purposes, and to charge therefor certain toll or rental, without which the said commissioners would be unable to maintain said water system for municipal purposes, except at an enormous and unreasonable expense to said city.

The General Assembly at its session of 1903, chapter 196, Private Laws, at the instance and with the approval and pursuant to a resolution of the Board of Aldermen of said city, duly passed in accordance with the provisions and requirements of Article II, section 14 of the Constitution, an act repealing sections 6, 17 and 18 of the Acts of 1899 (chapter 271, Private Laws), and conferring upon the Board of Water Commissioners power to acquire such additional property and make such additional improvements thereto as may be necessary to at all times furnish the city of Charlotte with a sufficient supply of good, wholesome water. And in order to procure necessary funds for that purpose, said board was given full power and authority to issue bonds not to exceed in amount the sum of two hundred thousand dollars, in such form and of such denominations and payable at such time or times and places, and to bear such rate of interest, payable semi-annually, as said board shall determine—said bonds to be signed by the Mayor of the city as *ex officio* chairman of said board, sealed with the corporate seal of said city, attested by the *ex officio* clerk of said board, and coupons on said bonds to bear the engraved or lithographed signature of said clerk. "All bonds so issued shall be equally and ratably secured by first mortgage or deed of trust upon all the real estate, rights, franchises and other property of every description owned and held by said board, and which was purchased by the city of Charlotte from the Charlotte City Water-works Company, as well as all other property, rights

and franchises which may hereafter be purchased or acquired by said board for the purpose of extending, maintaining and operating said system of water-works for said city." Provision is made for the execution of a mortgage or deed of trust on said property for the purpose of securing the payment of said bonds.

It was provided that the said Board of Water Commissioners, out of the moneys derived from the collection of tolls or rents for water, shall pay (1) the cost and expenses of operating said plant or system of water-works under its control, including the cost of such incidental improvements as the board may deem necessary for that purpose. (2) The semi-annual interest upon the bonds issued by virtue of section six (6) hereof as the same shall become due. (3) The cost and expense of such extensions and additions to the plant of said system as the board may from time to time deem advisable. (4) The semi-annual interest upon the bonds heretofore issued by the city of Charlotte for the purchase of said water-works as the same shall become due for a period of fifteen years from the date thereof. (5) After the expiration of which period all moneys so derived (less the cost and expenses of operating said plant, the interest on the bonds authorized to be issued hereunder, and the cost and expenses of additions to the plant as aforesaid) shall be turned over to the Treasurer of the city of Charlotte to be held by him and invested under the direction of the Board of Water Commissioners for a sinking fund with which to pay off, as they may mature, first, the bonds issued by virtue of section six hereof in full; second, the bonds heretofore issued by the city of Charlotte for the purpose of purchasing said water-works system: *Provided,* That none of the funds of the city of Charlotte raised by taxation shall ever be applied to the payment of either principal or interest of the bonds issued by virtue of section six (6) hereof."

Prior to the commencement of this action the Board of Water Commissioners, October 8, 1903, at a regular meeting unanimously adopted a resolution reciting the several matters and things herein set forth, and further reciting that "Whereas, it has become necessary to relocate and establish new reservoirs, pumping stations, pipe lines, etc., upon and connected with streams drawing their supply from watersheds not so liable to contamination, and sufficient to furnish the necessary water supply for said city for both present and future compensation."

"First. That the board, pursuant to the provisions of chapter 196 of the Private Laws of the General Assembly of North Carolina, ratified the second day of March, 1903, hereby authorizes and directs the issuance of one hundred and fifty thousand dollars of its bonds or obligations, payable to bearer thirty years after date of said bonds, and bearing interest at the rate of five per cent. per annum, payable semi-annually, etc. The said bonds to be of the denomination of one thousand dollars each, and payable only out of the moneys to be derived by the board from the collection of tolls or rents for water, as provided in the second subsection (17) of section 1 of the act hereinbefore referred to, the terms and provisions of which act are to be considered as if incorporated herein: *Provided,* That neither the bonds authorized to be issued hereunder, the coupons attached thereto, nor the deed of trust securing the same, shall be deemed or held as creating any debt of the city of Charlotte, or as pledging the faith or lending the credit of said city for the payment of the indebtedness hereby authorized, and no action shall be maintained in any court against said city or any of its officers to enforce the payment of said indebtedness evidenced by said bonds, coupons or deed of trust except as to the funds and property herein expressly charged with the payment thereof."

The form of the proposed bond is incorporated in said

resolution, conforming to the provisions of said Act of 1903 and said resolution.

The second of said resolutions provides for the execution of a mortgage or deed of trust for securing the payment of said bonds, conveying said plant, and all additions made thereto, with all franchises, etc., appurtenant thereto. The said resolutions in all respects conform to the provisions and requirements of the several acts herein referred to. The complaint alleges that the proposition to issue said bonds and mortgage has not been submitted to or approved by a vote of a majority of the qualified voters of said city, nor has said board any other authority therefor than is conferred by said Act of 1903. The Board of Water Commissioners threaten to and unless enjoined will issue and sell said bonds and execute said mortgage or deed of trust.

The plaintiffs aver that they are advised:

1. That the title to said water-works and appurtenances is held by said board in trust for said city of Charlotte upon the terms set forth in said acts, and that said board is bound in law to hold and operate the same upon the trusts aforesaid as such acts provide.

2. That the threatened bond issue and mortgage of said property and pledge of said rents and tolls is violation of the rights of the city of Charlotte and its citizens as secured to them by the law of the land and the several acts referred to, other than chapter 196, Private Laws of 1903, and particularly violation of Article VII, section 7 of the Constitution of the State.

3. That chapter 196, Private Laws of 1903, in so far as it attempts to authorize said Board of Water Commissioners to issue said bonds and to pledge the water rents, tolls and emoluments of said water-works plant and system and to mortgage the said property and franchises is violation of

section 7 of Article VII of the Constitution, and that therefore chapter 271 of the Private Laws of 1899, directing the manner in which the rents, etc., arising from said system of water-works and the operation thereof shall be applied is still in force and effect.

4. That said board has no power to mortgage said property or pledge the rents and tolls derived from the operation thereof, but that it is the duty of said board to hold the same upon the trusts attaching thereto.

5. That the issuance of said bonds and the execution of said mortgage will cast a cloud upon the title to said property.

The defendants demur to the complaint, for that it does not allege facts sufficient to constitute a cause of action, because it appears therefrom:

That the Act of 1903 expressly confers upon the said board the several threatened acts sought to be enjoined.

That said acts of the General Assembly were passed at the instance and with the approval of the Board of Aldermen.

That it is necessary to issue bonds for the purpose of securing funds sufficient to make the extension and improvements referred to and to enable said board to perform the duties and functions imposed upon it by said legislation.

That said proposed bond issue is a necessary expense to be incurred in preserving and maintaining in a state of efficiency municipal property already acquired by the city and held by said board in trust for necessary municipal purposes, and that therefore it is not necessary to be first authorized by a majority of the qualified voters of said city.

That the act and the resolution of the board expressly provides for the payment of the principal and interest of said bonds from and out of the tolls and rents received from the operation of said water-works, and further provides that neither said bonds nor the coupons attached thereto, nor the

deed of trust securing the payment thereof, shall be deemed or held as creating any debt of the city of Charlotte, or as pledging the faith or lending the credit of said city for the payment of the indebtedness thereby authorized.

That the issuing of said bonds and the pledge of said water rents, etc., will not be contracting any debt or pledging the faith or lending the credit of said city in the sense inhibited by section 7 of Article VII of the Constitution.

His Honor sustained the demurrer and the plaintiff appealed.

We have been very much aided in our investigation and disposition of this appeal by full and excellent briefs and oral arguments of the learned counsel for the parties to the record.

It will be convenient to dispose of the questions raised by the pleadings in an order somewhat different from that in which they are presented. If, as contended by the defendants, the bonds proposed to be issued are not debts or liabilities of the city, or if the making and issuance of them be not pledging the faith or lending the credit of the city within the meaning of section 7, Article VII of the Constitution, several important and interesting questions discussed in the briefs will be eliminated. This question has not before been presented to or decided by this Court. The language of the Constitution declares that no county, city, town or other municipal corporation "shall contract any debt, pledge its faith, or loan its credit," etc. The plaintiffs insist that the issuing of the bonds in controversy comes within this inhibition. "Debt" is defined to be "that which is due from one person to another; that which one person is bound to pay or perform to another." Black's Law Dict., 337. *Perrigo v. Milwaukee,* 92 Wis., 236. "An indebtedness within restrictions upon municipal indebtedness is an agreement of some kind by the municipality to pay money where no suitable

provision has been made for the prompt discharge of the
obligation imposed by the agreement. *Sackett v. New Al-
bany,* 88 Ind., 473; 45 Am. Rep., 467. "A debt is a speci-
fied sum of money which is due from one person to another
and denotes not only the obligation of the debtor to pay, but
also the right of the creditor to receive and enforce payment."
*State v. Hawes,* 112 Ind., 323. It would not be contended
that upon the facts in this case the city lends its credit, or
pledges its faith, in regard to the proposed bonds. It does
not endorse or guarantee their payment or assume any obli-
gation in respect to them. Nor can its revenues be applied
to the payment of them. The income accruing from the
operation of the water-works is not to be paid into the city
treasury for disbursement, nor does the city assume any
responsibility in regard to the disbursement of the money
by the Board of Water Commissioners. This board collects
the rents and applies them to the purposes designated in the
act. After the payment of the interest and other objects
mentioned in the law, the amount remaining on hand shall
be turned over to the Treasurer of the city of Charlotte, to
be held by him and invested under the direction of the Board
of Water Commissioners for a sinking fund. The Treasurer
of the city is made *ex officio* treasurer of said board. His
bond, of course, is liable for any default in the discharge of
his trust, but the city assumes no responsibility in the matter.
The statute is so carefully drawn and guarded that but little
is left to construction. There can be no possible doubt as to
the legal effect and operation of the language used in the
statute and the bond, excluding any power to apply the reve-
nues of the city to the payment of the interest on or principal
of the bonds. We find that the courts of other jurisdictions
have considered and decided the question arising upon the
construction of restrictive provisions similar to ours. The
Constitution of the State of Washington prohibits any town

or city contracting any debt in excess of a certain percentage of the assessed value of its property. The city of Spokane undertook to borrow money to complete a system of water-works, and for securing the payment thereof pledged a portion of its rents derived from said water-works. In an action brought to restrain the city government from making the contract, the Court, *Hoyt, C. J.,* said: "And it is claimed on the part of the respondent that the entering into said contract and the issuance of such obligations of the city is the incurring of an indebtedness within the meaning of the Constitution, and to do so at the present time is not within the power of the city, for the reason that it is already indebted beyond the constitutional limit. * * * Said ordinance and contract, when construed together, provide that the obligations to be issued in pursuance thereof shall be payable only out of the special fund to be created out of the receipts of the water-works, as above specified, and that the city shall not be in any manner liable to pay the same except out of the moneys in said special fund. * * * This being so, we are of the opinion that neither the ordinance, the contract, nor the obligations to be issued by the city in pursuance thereof, do, or will, constitute a debt of the city within the constitutional definition. The only obligation assumed on the part of the city is to pay out of the special fund, and it is in no manner otherwise liable to the beneficiaries under the contract. The general credit of the city is in no manner pledged except for the performance of its duty in the creation of the special fund." *Winston v. Spokane,* 41 Pac. Rep., 888 (Wash.). The Court affirmed and followed this case in *Faulkner v. Seattle,* 53 Pac. Rep., 365 (Wash.).

The Supreme Court of Iowa, in *Swanson v. Ottumwa,* 59 L. R. A., 620 (Iowa), thus states the view held in that State, which we think is correct: "The tax required to be levied is clearly authorized by the statute, and such tax, together

with the income of the company derived from other sources, the ordinance expressly provides shall pay all obligations assumed by the city. If it does not, neither the bondholders nor company have any claim on the city for the deficiency. The obligation of the city is to levy the tax and see that the amount collected is applied to the specific purposes. If the special fund legally provided is not sufficient, then it may be well said the deficiency is not payable by the city; and it is difficult to conceive how there can be such a thing as a debt which is never to be paid. No burden is created thereby, and there cannot be such an indebtedness. In a constitutional sense, the prohibited indebtedness must be a burden and payable from funds which could not be constitutionally appropriated for that purpose." *Water-works Co. v. City of Creston,* 101 Iowa, 687.

The Supreme Court of Illinois, in *Springfield v. Edwards,* 84 Ill., 633, thus states the proposition: "When the appropriation is made and the warrant or order on the treasury for its payment is issued and accepted, the transaction is closed on the part of the corporation, leaving no future obligation, either absolute or contingent, upon it whereby its debt may be increased." It is also held in this case that for a failure to collect and pay over the "special fund," the remedy must be against the officers and not against the corporation, "otherwise a contingent debt would be incurred."

The case of *United States v. Fort Scott,* 99 U. S., 152, presents very clearly the distinction between the status of the city in respect to the bond issue therein and in our case. *Mr. Justice Harlan* says: "The general reference upon the margin of the bonds to the ordinance under which the improvement was projected should not, in view of the general powers of the Council, as declared in the statute, be held as qualifying or lessening the unconditional promise of the city set forth in the body of the bonds, itself to pay the bonds,

with the prescribed interest, at maturity." Again he says: "But the unquestioned fact remains that the bonds, with some interest, held by the relator were not paid at maturity as the city agreed that they should be."

As we have pointed out, the city of Charlotte makes no such promise. Any inference or suggestion to that effect is expressly negatived by the act, the resolution and the terms of the bonds.

It is said, however, if the rents and tolls accruing from the operation of the water-works, as provided by the Act of 1899, are diverted to the purposes of the Act of 1903, the burden on the ordinary revenues will be increased and thereby its debt indefinitely increased. We cannot see how this result can justly be called contracting a debt. The question raised by this suggestion will be discussed in another phase of the controversy. We conclude that the proposed bond issue will not constitute a debt against the city of Charlotte in any legal or constitutional sense. It is immaterial, in this phase of the question, whether we regard the bonds as issued by the Board of Aldermen or the Board of Water Commissioners. We deem it proper to say this, that it may be seen that we have not overlooked the language of section 6 of the Act of 1903: "And the contracts and engagements, acts and doings of said board within the scope of its duty and authority shall be obligatory upon and be in law considered as if done by the Board of Aldermen of the city of Charlotte." The conclusion which we have reached is not affected by the fact that the bonds are issued by the Board of Water Commissioners, but is based upon the provision for raising the fund out of which they are to be paid, *to the express exclusion of any other fund or revenue of the city.*

Holding, as we do, that the proposed bond issue is not creating a debt against the city, or lending its credit, or pledging its faith, we do not deem it necessary to pass upon

the question raised by the demurrer, that the purpose for which the fund is to be raised is a "necessary expense," within the meaning of Article VII, section 7 of the Constitution. There is much force in the position that upon the admitted facts in the case the bond issue could be sustained as a necessary expense. It is evident that the value and efficiency, if not the preservation, of the present system of water-works as an essential agency in protecting the property and health of the city and its inhabitants is involved in the proposed action by the board. While the policy indicated by the restrictive constitutional provision upon municipal indebtedness must be kept in view and upheld; we may not disregard the ordinary meaning of words or give to them a strained and unusual construction. Surely no one could well contend that these words, if used in a power of attorney respecting the private business of the citizen, would be construed to prevent the agent from assuming for his principal such obligations as were necessary for the protection of his property and the performance of the duties imposed upon him. The people of Charlotte have by their votes declared that a system of water-works is essential to their corporate welfare and safety. They have empowered their municipal servants and agents to expend a large sum for securing such a system. Is it not clear that this involves the duty of protecting this property and making it efficient for the very important, may we not say necessary, purpose for which it was originally acquired? If so, the power to contract such obligations as are necessary to discharge the duty must be found. "Narrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves, and designated as a chart upon which every man, learned or unlearned, may be able to trace the leading principles of government." Cooley Const. Lim., 59.

That water-works are held by the city or such *quasi* muni-

cipal corporations as may be established by the Legislature for such purpose for public use and for public purposes is clearly shown by the Supreme Court of the United States in *New Orleans v. Morris,* 105 U. S., 65.

The plaintiffs suggest that the property purchased by the city by the Board of Aldermen, and by the Act of 1899 transferred to the Board of Water Commissioners, is impressed with a trust for the city, and for the purposes set out in this act, "and that said board is bound in law to hold and operate the same upon the trusts aforesaid." It is clear that the Legislature may, in aid of municipal government or for the purpose of discharging any municipal functions, or for any proper purpose, create municipal boards and confer upon them such powers and duties as in its judgment may seem best. Section 4, Article VIII of the Constitution ordains that "It shall be the duty of the Legislature to provide for the organization of cities, towns and incorporated villages," etc. It is uniformly held that "municipal corporations are mere instrumentalities of the State for the more convenient administration of local government. Their powers are such as the Legislature may confer, and these may be enlarged, abridged or entirely withdrawn at its pleasure," etc. *Lilly v. Taylor,* 88 N. C., 489; *Harris v. Wright,* 121 N. C., 172; *State v. Beacham,* 125 N. C., 652. The Legislature has frequently exercised the power conferred by the Constitution by establishing boards of health in towns and cities, school boards and such others as may be deemed wise as additional government agencies. We do not understand that this power is questioned, or that the title to the property purchased by the city from the Charlotte City Water Company did not pass to and vest in the Board of Water Commissioners established by the Act of 1899.

In *Kennebeck Water District v. Waterville,* 96 Me., 254, it is said: "The Kennebeck Water District is a *quasi* munici-

134——2

pal corporation.   *   *   *   The powers, the rights and the property of the new corporation rest exclusively in it, and in no degree in the city of Waterville.   That the Legislature has authority to create the Water District cannot be success-fully questioned."

"There is no prohibition which we have been able to dis-cover, and we have been pointed to none, against the creation by the Legislature of every conceivable description of corpo-rate authority and to endow them with all the faculties and attributes of other pre-existing corporate authority.   Thus, for example, there is nothing in the Constitution of this State to prevent the Legislature from placing the police department of Chicago or its fire department or its water-works under the control of an authority which may be constituted for such purpose."

"The Constitution nowhere commits corporate objects or purposes irrevocably to authorities now existing, nor does it prohibit the committal of them to such corporate authority whose appointment may be called into life by the same law which creates the subject and commits it to their jurisdic-tion."   *People v. Solomon,* 51 Ill., 37; *Wilson v. Sanitary Dist.,* 133 Ill., 443; *People v. Draper,* 15 N. Y., 443.   A very exhaustive discussion of the subject may be found in *Dovock v. Moore* (Mich.), 28 L. R. A., 783.   Plaintiffs con-tend that, conceding the power of the Legislature to establish the Board of Water Commissioners and to transfer to the said board the property of the city, as was done by the Act of 1899, that the Legislature has not the power to repeal that act and attach other and different trusts to the property, or authorize the board to sell or mortgage it, and for this posi-tion they assign two reasons: First, because it is taking the property of the city without due process of law; and second, because by the Act of 1899 the net rents and tolls of the water-works are directed to be applied to the payment of the

interest accruing on said bonds, and to create a sinking fund for their payment.

Referring to the liability of water-works to be sold for debts of the city, *Judge Miller* says: "The learned counsel, in the oral argument and in the brief, substantially concede that the water-works themselves, in the hands of the city, were not liable to be sold for the debts of the city. And if no such concession were made, we think it quite clear that these works were of a character which, like the wharves owned by the city, were of such public utility and necessity that they were held in trust for the use of the citizens."

"The property owned by the city corporation is held by it as a public corporation and is subject to the law-making power of the State vested in the Legislature." *Darlington v. The Mayor, etc.,* 31 N. Y., 164; 88 Am. Dec., 248; in which the question is exhaustively discussed. *Merriweather v. Garrett,* 102 U. S., 473. In *Huron Water-works Co. v. Huron* (S. Dak.), 30 L. R. A., 848; 58 Am. St. Rep., 817, we find a careful review of the authorities and decisions, the Court saying: "Having, as we think, established the proposition that the water-works of a city, when constructed and owned by the city, are to be regarded the same as other city property held for public use, and, therefore, charged and clothed with a public trust, it would seem to follow that such property cannot be sold and conveyed by the Mayor and Common Council of the city *unless under special authority conferred upon them to sell and convey the same by the legislative power of the State.*"

The Supreme Court of Connecticut, in *West Hartford v. West Hartford Water Commissioners,* 44 Conn., 360, said: "The introduction of a supply of water for the preservation of the health of its inhabitants by the city of Hartford is unquestionably now to be accepted as an undertaking for the public good in the judicial sense of that term; not indeed as

the discharge of one of the few governmental duties imposed upon it, but as ranking next in order. For this purpose the Legislature invested the city with a portion of its sovereignty. * * * The city of Hartford, that it might more economically discharge its duty in this behalf, entrusted this matter of the introduction of water to an agency named the Board of Water Commissioners, and in the name of this agency these lands were purchased and are now held. But they are held merely as a trust; in substance, the land was bought and paid for and is now clearly the property of the city." These and many other cases we have examined establish the doctrine that the water-works are held for the benefit of the public, and are therefore subject to legislative control. In this case it appears affirmatively that this Act of 1903 was passed at the request and with the approval of the Board of Aldermen of Charlotte. That the Legislature may empower the city by its appointed agencies to dispose of property held upon trusts for the public is settled. Dillon on Municipal Corporations, 575. *Judge Dillon,* after noticing a case holding that the power to take, hold, sell and dispose of property so held confers the power to mortgage, says that he cannot concur with that view, and proceeds to say: "Under charter authority to make all contracts which they may deem necessary for the welfare of the city, a Mayor and Councilman were considered to have the power to mortgage the city water-works for the payment of bonds lawfully issued for the construction of the same." Without adopting this view of the law, we have no difficulty in holding that by express permission of the Legislature the board may execute a valid mortgage conveying the water-works, etc., for the purpose of securing the bonds. The plaintiffs suggest that, as the Act of 1899 applied to rents and tolls of the water-works, the Act of 1903 cannot divert them. Certainly the holders of the bonds of 1897 had no lien upon or contract right to these rents.

The bonds were issued two years before the act was passed; therefore the purchasers could not look to any other claim upon the city than its general revenues.

In *Adams v. Mayor, etc., of Rome,* 59 Ga., 765, *Bleckley, C. J.,* says: "With the proceeds of the bonds the water-works were paid for. The holders of the bonds received them without other express security than those offered by the special act. These provisions were in substance that all the property within the city, real and personal, should be subject to taxation *pro rata* for the payment of the interest and the redemption of the bonds. * * * It is argued in behalf of the city that the means of liquidation thus provided for by law are exclusive, and that, for that reason, the Mayor and Council could not devote the water-works or any other property to the payment of the interest or to the discharge of the principal of the bonds. We think otherwise. The special act was not intended, as it seems to us, to narrow or cut down the charter in respect to the power of disposing of the corporate property, or of applying the same to the corporate indebtedness by any contract deemed by the Mayor and Council necessary for the welfare of the city."

The Supreme Court of the United States, speaking of the cases which hold that corporate property pledged to the payment of bonds may not be diverted from that purpose, says: "They simply hold that an act of the Legislature, passed after a contract is made, which withdraws property then liable to be seized and sold in enforcement of that contract from the power of the courts to seize and sell it, impairs the obligation of the contract. But it has never been held, so far as we are advised, that a statute dealing with property *not* subject to sale for the enforcement of the contract cannot, in providing for a change in the mode of the title by which the debtor holds it, continue the exemption from forced sale of that which it

represents in the hands of the same owner the property so exempt."

We have not overlooked the case of *Vaughn v. Commissioners,* 118 N. C., 636, in which it is held that the Commissioners of a county may not mortgage the court-house to secure bonds issued for the purpose of building it. There was no legislative authority conferred to do so. There is no suggestion in the opinion of the Court that such power could not be conferred.

The only case to which our attention has been called which militates against the view which we have taken is *City of Joliet v. Alexander* (Ill.), 62 N. E. Rep., 861. Without extending this opinion with a discussion of the facts therein and the conclusion reached by the Court, we do not regard it as controlling us in the disposition of this case. The power to execute a mortgage does not appear to have been conferred by the statute, the terms of which are not set out.

In *Southport v. Stanly,* 125 N. C., 464, this Court, construing section 3824 of The Code, says: "The reasonable construction of the statute must be that the town or city authorities can sell any personal property, or sell or lease any real estate which belongs to the town or city, as the surplus of the original acreage ceded for the town or city site, or such land as may have been subsequently acquired or purchased. But in no case can the power be extended to the sale or lease of any real estate which * * * is to be held in trust for the use of the town, or any real estate * * * which is devoted to the purpose of government, including town or city hall, market-houses, houses used for fire departments or for water supply or for public squares or parks. To enable the town to sell such real estate as is mentioned just above there must be a special act of the General Assembly authorizing such sale or lease."

It is stated that to enable the Commissioners to furnish

water for municipal purposes at a reasonable expense it is
necessary that it be furnished to citizens at a fair and reason-
able rental.  The power of the city to do this was brought
into question in *Slocumb v. Fayetteville,* 125 N. C., 362.
*Furches, J.,* said: "We see no objection to the town furnish-
ing electric lights and power to its citizens at uniform rates,
as this is a means of local assessment according to the special
benefits received by such parties over that of the general
public, and these assessments may be used for the support
of the concern and the general benefit of the whole."  We
think this language meets the objection to the power of the
board, with legislative sanction, to pledge the tolls, rents, etc.,
of the public water-works to the purposes prescribed by the
act.  Such assessments are no part of the revenue of the city
derived from taxation.  The distinction between the taxing
power and the power to levy assessments for special benefits
is clearly pointed out by this Court in *Shuford v. Commis-
sioners,* 86 N. C., 552, and other cases in which the question
is discussed and decided.  Am. and Eng. Enc., Vol. 25, p.
1168.  We can see no reason why the Legislature may not,
under its general power to provide for the government of
cities and towns and legislate in regard to them, authorize
the Board of Water Commissioners to apply the rents and
tolls as they accrue to the purposes set out in the act, and to
pledge such application.  The contract thus made will be
enforceable by appropriate remedies.  We, therefore, hold
that the bonds authorized by the Act of 1903 to be issued do
not constitute a debt against the city of Charlotte.  That
the water-works now owned by the Board of Water Commis-
sioners, or hereafter to be purchased, with all rights and fran-
chises appurtenant thereto, are held by the said board in trust
for the use of the city, and are not subject to be sold for any
indebtedness of the city.  That the Act of 1903 does not im-
pair any rights of the holders of the bonds issued pursuant

to the provisions of the Acts of 1881 and 1897. That the
Legislature has the power to authorize the issuing of the
bonds and execution of the mortgage proposed to be issued
and executed pursuant to the Act of 1903. That pursuant
to the provisions of said act, the Board of Water Commis-
sioners has the power to pledge the rents and tolls accruing
from the operation of said water-works to the purposes speci-
fied in said act.

The judgment of the Court below is
Affirmed.