Jones, J.
In seeking the injunction the petition stated that while ostensibly the purpose of the construction of the improvement was to encourage and promote commerce, manufacturing and other public *284 purposes, in reality the sole purpose thereof was “to promote the interest of certain private persons and corporations who desire to appropriate the waters in the lakes and streams” to their own private uses. This was denied in the first defense of the answer. Since the plaintiff did not see fit to offer evidence upon this issue, but confined himself to his demurrer challenging the sufficiency of the second defense, we are necessarily confined to the consideration of his general demurrer to that defense.
The act of the general assembly challenged in this case comprises Sections 412-1 to 412-15, inclusive, General Code. This act (108 O. L., pt. 1, 219) was entitled an act to supplement Section 412 of the General Code by adding thereto other sections “relative to preventing destructive floods and conserving and preventing waste of the waters of the streams, lakes and public waters of the state of Ohio, and to provide for the sale or lease to the public of such water,” etc., and was evidently passed under authority of Section 36, Article II of the Constitution as amended in 1912. The act comprised fifteen subsections of the General Code. '■ Briefly stated, in its general outlines, it authorized the superintendent of public works, subject to the approval of the governor, to acquire property for thh construction of reservoirs, dams, etc., for the purposes named in the first section of the act. It empowered the superintendent with authority to prepare find submit to the governor for approval plans,' specifications and estimates for construction. Upon approval by the governor the superintendent was required to proceed with the construction of the imv *285 provements, and was authorized to “issue and sell bonds of the state of Ohio, not in excess of the estimated cost of such improvements, ” which bonds were not to mature later than twenty-five years from the date of the issue. After the sale of the bonds, and payment of the proceeds, the superintendent was empowered to make contracts for construction, which should not exceed the estimated cost of the improvement, together with the cost of the land acquired and damages resulting therefrom. The improvements, including said contracts, were to be paid for out of the proceeds from the sale of the bonds. The superintendent was authorized to sell or lease for a' period of twenty-five years the water or power generated thereby, and to impound the funds derived from the sale or rental thereof in the hands of the state treasurer, which funds were expressly pledged for the purposes of maintaining the improvements, and for the payment of interest and principal on the bonds as they might mature. The owners of the bonds were given a lien on such improvements, and on certain default in payments thereon they were authorized to foreclose their liens. The purchaser at foreclosure sale, under the provisions of the act, acquired the interests of the state and bondholders in the improvements for a period of twenty-five years, with the right to conduct water and power during that period over the lands, channels, etc., of the state. During that time the purchaser at foreclosure sale was required to maintain the improvements in a good state of repair, and refrain from interfering in any wise with certain specific rights of navigation, control and maintenance reserved to the state. By his de *286 murrer, plaintiff in error challenges the constitutionality of the act referred to. It is argued that ti e act violates Sections 1, 2, 3, 4 and 7, Article VIII, and Sections 6 and 11, Article XII, of the Ohio ■Constitution. These various, sections of the constitution relate to the limitations placed in the constitution in relation to the incurring of bonded and other indebtedness by the state, and to the pledging of its faith and credit. Section 1, Article VIII, provides that the state may contract debts, to supply deficits or failures in revenues, and expenses not otherwise provided for, but that the aggregate amount of such debts contracted by the general assembly “shall never exceed $750,000.” Section 2 of the same article provides that in addition to the above limited power the state may contract debts to repel invasion, suppress insurrection, defend the state in war, or to redeem outstanding indebtedness of the state.
Section 3, Article VIII, which is perhaps more germane than any other in the solution of the question before us, reads as follows: “Except the debts above specified in sections one and two of this article, no debt whatever shall hereafter be created by or on behalf of the state.”
If any single provision of the Ohio Constitution has been violated by the adoption of the act referred to, it is that provision which has just been quoted. It, therefore, remains to be determined whether the authorization of the powers conferred upon the superintendent of public works, and especially the issue and sale of bonds on behalf of the state under this act, constitutes, a “debt” within the purview of the constitution. As ordinarily understood a *287 debt is a sum which may be owing from one to another and connotes an obligation upon the part of the debtor to pay. If the legislative act saddles an obligation upon the state to pay a sum of money either in praesenti or in futuro, since such obligation does not come within the limitation provided for in Sections 1 and 2, Article ‘VIII, referred to, undoubtedly the legislature would be exceeding its power in the passage of the act. An inspection of the act, however, discloses that under no circumstances, and under no possibility, can the state be made to answer for any of the obligations created by the act, by reason of the construction of such improvement. Although under the terms of the act the bonds of the state are authorized to be sold at not less than par, and to an amount not exceeding the cost of the improvement, the act itself explicitly provides in Section 412-2, General Code, that said bonds “shall create no liability upon, nor in a,ny wise be considered cm indebtedness of the state of Ohio, but shall be paid, both principal and interest, solely out of the proceeds arising from the sale or lease of the water impounded and conserved or the power generated by the improvements constructed,” etc.
This act provides that the superintendent of public works shall be the supervising officer under whom the improvements are made. By that means the state may retain its control over the plans, specifications, estimates and construction of the improvement, for to place the construction in private hands might endanger the purposes of the state to conserve its water and generate power for the public interest. The act also stipulates that the treasurer *288 of state shall be the depositee of the funds collected, and hold same, not as a part of the state fund, but as a special deposit known as the “water conservation fund,” which is pledged for the maintenance of the improvement and as a sinking fund to redeem the bonds issued and sold under the act.
The legislature no doubt considered it to be a wise public policy to place the supervision of the construction of the improvement under control of the state, and that the payments therefor should be disbursed by its own officers. But while the legislature employed these official agents for the purposes named, it was careful to provide that under no circumstances should the state respond, by taxation or otherwise, to the payment of the bonds issued in anticipation of the cost of the improvement. Were this the creation of a state debt, or a pledging of its financial credit, directly or indirectly, this court would not hesitate to pronounce the legislative act void. But we fail to perceive, even by a strained construction, how the act under consideration, or its mode of operation, violates the provisions of the constitution. The debt created under the act i* not a state debt; the bonds authorized thereunder entail no obligation upon the state which it is required, either legally or morally, to assume; the mortgage attaches to no property owned by or purchased with the revenues of the state. Counsel for plaintiff in error cite the following cases in support of their contention that the act in question is violative of the constitutional provisions referred to: Lesser v. Warren Borough, 237 Pa. St., 501; Evans v. Holman, 244 Ill., 596, and City of Joliet v. Alexander, 194 Ill., 457.
*289 These cases are readily distinguished from the instant case in that the debts thereby created were not only made a lien upon the current revenues of the public utilities, but were also made a lien upon the property of the municipality, by which the property of the municipality was pledged for the payment of the lien. The scheme adopted in those cases was nothing less than a guise pledging the credit of the municipality by a provision that the debt created should not only be paid out of the revenues of the improvement, but by a sale of the municipal property, and Mr. Justice Cartwright, in the latter case, distinguishes the principle involved, where he says on page 463: “What is said relative to mortgaging property owned by the city or pledging its existing income is not intended to apply to a mortgage purely in the nature of a purchase money mortgage, payable wholly out of the income of property purchased-or by resort to such property. * * * The reasoning in Winston v. Spokane, 41 Pac. Rep., 888, cannot be applied to a case like this, and could only apply to property or a fund which the city never had, where the property is to be paid for by its own earnings without imposing any further liability on the city.”
The principle found in the exception announced by the learned judge is supported by the following authorities : Faulkner v. City of Seattle, 19 Wash., 320, 53 Pac. Rep., 365; Brockenbrough v. Board of Water Com’rs of City of Charlotte, 134 N. C., 1, 46 S. E. Rep., 28, and Winston v. City of Spokane, 12 Wash., 524, 41 Pac. Rep., 888. The latter case is frequently cited. The following is the syllabus: “Const, art. 8, § 6, providing that no city ‘shall *290 become indebted in any manner’ over a certain amount, does not prohibit a city, indebted over said amount, from borrowing money to complete waterworks, where the loan was to be paid out of a special fund created by the receipts derived from such waterworks, without imposing any further liability on the general funds of the city.”
No case has been found or cited sustaining the principle that constitutional provisions against the creation of debt apply to a case where the public property was purchased or constructed by private funds and payment therefor made exclusively from the revenues derived therefrom, and from the property itself in case of default. In the instant case the state does not extend either its resources, its revenues or its credit for the purchase or condemnation of land or for damages accruing from the improvement. The act was passed under a constitutional provision, and Section 412-1 of the act provides that the “public welfare and the best interests of the citizens of the state” should be the main feature controlling the action of its public officials. A large measure of discretion is given by the act to state officials in initiating and carrying out the proposed improvement; if this discretion should be grossly abused, by a showing that the proposed scheme of improvement under the act was merely a guise to subserve private ends, the court would certainly enjoin the improvement proposed. In the .event the revenues obtained from the improvement should be insufficient to maintain it and to pay the bonds issued, and in case the property should be sold by decree in foreclosure, such decree should 'safeguard the interests .of the state by a provision *291 under Section 412-11, General Code, for mainten-. anee, repair and control by the state in conformity to said section.
Section 412-2, General Code, provides that “Said bonds shall show, on their face, the purpose for which issued and shall create no liability upon, nor in any wise be considered an indebtedness of the state of Ohio,” etc.
One of the arguments urged by the plaintiff in error is the possibility of fraud practiced upon innocent purchasers of these bonds if no statement is made upon their face which shows that the state is relieved from liability under the provisions of that section. "Whether such a stipulation should appear upon the face of the bonds is not made clear by the language of the section, but in view of the fact that the state has undertaken, by its public officials, the work of initiating, constructing and paying for the-improvement, as well as the issuing and sale of bonds therefor, this court suggests that in order to avoid possible fraud the public officials charged therewith should state upon the face of such bonds the provisions of the limited lien found in that part of the quoted section.
In the second defense of his answer the superintendent of public works alleges that in the construction of the improvement he proposes to sell under the provisions of the act bonds in excess of $750,000. Inasmuch as we have held that the debt proposed to be created for the construction of this improvement was not a debt of the state, and that the issue and sale of bonds for the payment thereof was not a state obligation, it follows that the limitation of amount contained in Section 1, Article VIII of the *292 Constitution, in that respect, does not apply, and the superintendent of public works is not confined in his expenditure to the amount specified therein.
The judgment of the court of appeals is affirmed.

Judgment affirmed.

Johnson, Hough, Robinson and Matthias, JJ., concur.
Wanamaker, J., took no part in the consideration or decision of the case.