Argued March 6, affirmed March 20, 1928.

## MARION F. McCLAIN v. THE REGENTS OF THE UNIVERSITY ET AL.

(256 Pac. 412.)

**States—Indebtedness Incurred by State University Constitutes "Indebtedness of the State," Within Constitutional Limitations (Const., Art. XI, § 7).**

1. University of Oregon is not an independent legal entity, but is an administrative agency vested by legislature with certain corporate powers, and any indebtedness authorized by statute is an "indebtedness of the state," within meaning of Constitution, Article XI, Section 7.

**States—Issuance of Bonds by Regents of State University for Construction of Dormitory Payable from Special Fund Made Up of Rentals Held not in Violation of Constitutional Provision for Debt Limitation (Laws 1927, p. 364, §§ 1, 2; Const., Art. XI, § 7).**

2. Action of Board of Regents of State University pursuant to Laws of 1927, page 364, Sections 1, 2, authorizing sale of bonds for construction of dormitory with the only liability against a special fund to be made up exclusively of net rentals received therefrom, *held* not in violation of Constitution, Article XI, Section 7, limiting state indebtedness.

**Colleges and Universities—Regents of State University had Authority to Issue Bonds for Construction of Dormitory (Laws 1927, p. 364, §§ 1, 2).**

3. Board of Regents of State University had power, under Laws of 1927, page 364, Sections 1, 2, to issue bonds for construction of dormitory, only liability created being against a special fund to be made up exclusively of net rentals.

---

Colleges and Universities, 11 C. J., p. 976, n. 22, p. 993, n. 61, p. 994, n. 83.

From Lane: Walter H. Evans, Judge.

In Banc.

Affirmed.

For appellant there was a brief over the name of *Messrs. Teal, Winfree, McCulloch & Shuler,* with an oral argument by *Mr. John W. Shuler.*

For respondents there was a brief over the name of *Messrs. Potter & King,* with oral arguments by *Mr. Lawrence T. Harris* and *Mr. E. O. Potter.*

BELT, J.—This is a suit to enjoin the issuance and sale of bonds in the amount of $400,000, the proceeds to be used in the construction of a dormitory on the campus of the University of Oregon. The Regents of the University propose to issue and sell these bonds under authority of Chapter 289, Laws of Oregon for 1927, which, omitting the title to the act, provides as follows:

"Section 1. The board of regents of the Oregon State Agricultural college and/or the board of regents of the University of Oregon is (or are) hereby authorized to enter into contracts with persons, firms, or corporations for the erection of buildings for dormitory, housing and boarding purposes and for student activities; and either of said boards are (is) further authorized to purchase or lease lands and other appurtenances necessary for the construction of such buildings, and to purchase or lease lands with buildings constructed thereon suitable for the purposes aforesaid; and either of said boards of regents are (is) also authorized to lease to any persons, firms or corporations such portions of the campus of the said Oregon State Agricultural college and/or of the said University of Oregon as may be necessary for the construction of buildings for the purposes afore-

said and the reasonable use thereof; provided, that the state of Oregon shall incur no liability by reason of exercise of the authority hereby granted to either of the said boards of regents aforesaid other than as hereinafter specifically set forth; and provided further, that such lands, buildings or appurtenances shall be used solely for such dormitory, housing, boarding or student activities in said college or said university. Said boards of regents are hereby respectively authorized to contract to pay as rental or otherwise a sum sufficient to pay, on the amortization plan, the principal and interest thereon, of the purchase price of said lands and buildings or the erection costs of said buildings or appurtenances, such contracts to run not over twenty years. The rate of interest on the principal on any such purchase or erection cost shall not exceed 7 per cent per annum, payable semiannually or annually, as determined respectively by said boards of regents.

"Section 2. Either of said boards of regents is hereby authorized to expend on the amortization plan any part of the rentals on any or all rooms, dormitories, dining rooms, housing or student activity buildings, lands or the appurtenances, thereon, and to pledge on behalf of said college and/or said university aforesaid, the net income from said rentals for the payment of all rentals or erection or other contract charges agreed to be paid on account of such dormitory or dormitories, dining room, housing, and student activity buildings, lands or appurtenances."

After the passage of the above act the Board of Regents adopted a resolution providing that the erection cost of the dormitory be financed by the issuance and sale of bonds to an amount not in excess of $400,000, "to be payable on the amortization plan over a period not exceeding twenty (20) years' time, * * ," and that the payment thereof should be limited "to the special fund to be derived from the net income from said building, and from that fund only."

It was further provided, ''That said Board of Regents expend the net income of the rentals from said building for the payment of said bonds and the interest thereon issued to secure funds with which to pay said erection costs of said building and that said Board of Regents pledge said net income for such payment, and agree to use its best efforts to the end that said fund will be sufficient to pay said bonds and the interest thereon, when due.''

Plaintiff contends that the issuance and sale of these bonds creates an indebtedness of the State of Oregon in violation of Article XI, Section 7, of the Constitution of Oregon, which, so far as material herein, provides:

''The legislative assembly shall not lend the credit of the state nor in any manner create any debt or liabilities which shall singly or in the aggregate with previous debts or liabilities exceed the sum of fifty thousand dollars, * * .''

It is the theory of the plaintiff that whatever indebtedness the above act authorizes the Regents of the University to contract is a liability against the State of Oregon. It is also urged that the act, in any event, does not authorize the issuance of bonds.

Defendants answer that ''The Regents of the University'' is a corporation constituting a distinct and independent legal entity and that, by reason thereof, the state in no way has undertaken to lend its credit or create any liability in violation of the constitutional limitation of indebtedness. Furthermore, the defendants say if it is held that the constitutional provision applies to the University, since the cost of the building is to be paid from the net rentals to

accrue in the future, no indebtedness within the meaning of such provision is created.

From a decree upholding the validity of the bonds and dismissing the suit for injunction, the plaintiff appeals.

The University of Oregon is a state institution. It is not an independent legal entity. It was created by an act of the legislature in 1876; its regents are appointed by the Governor with the advice and consent of the Senate and their powers and duties are specified by statute. Since its creation, the University has been maintained largely from public funds. Its management and control has never been surrendered by the state. Section 5417, Or. L., provides in part that:

"All funds received by the university of Oregon from any source applicable to the payment of current expenses, shall be paid into the state treasury * * and shall be paid out only on warrants of the secretary of state, based on duly verified vouchers as other claims are paid, for the support and maintenance of the university, * * ."

The legislature, by Chapter 157, Laws of Oregon for 1923, provided that:

"Legal title to all real property heretofore or hereafter conveyed to the regents or board of regents of the state university or University of Oregon, or to the University of Oregon or to the state university, is and shall be deemed to be conveyed to and vested in the state of Oregon."

1. If our conclusion be sound that the "Regents of the University" is not an independent legal entity and is merely an administrative agency vested by the legislature with certain corporate powers to carry out the educational policy of the state, it follows that any indebtedness authorized by statute is an indebted-

ness of the state. Article XI, Section 7, of the Constitution was adopted by the people as a protection against burdensome and excessive taxation. The state government must respect this wholesome constitutional provision as must such subordinate agencies.

This court, in the early decision of *Dunn* v. *The State University,* 9 Or. 357, held that the legislature had impliedly designated the Regents of the University a corporation. The court, however, refused to decide whether such should be classified as a private or a public corporation. In *Farrell* v. *Port of Columbia,* 50 Or. 169 (91 Pac. 546, 93 Pac. 254), the court, speaking through Mr. Chief Justice Bean, commented on the Dunn case as follows:

"The regents of the University, if an incorporation, in the sense that they may take and hold title to property, and sue and be sued, are not a corporation in the ordinary meaning of that term. They are merely administrative agents of the State, charged with the control and supervision of one of its educational institutions, with no power to levy or collect taxes, or impose burdens upon the people of the State or any particular locality thereof."

We do not find the force and effect of this statement lessened or destroyed by anything said in *State* v. *Port of Astoria,* 79 Or. 1 (154 Pac. 399). We accept the adjudication in the Dunn case that the Regents of the University is a corporation, with the understanding that it is not private in character. We consider it a public corporation, created by legislative enactment for the special purpose of carrying out the educational policy of the state. In some respects it is analogous to other state institutions which are

maintained by appropriations from public funds.  As stated in 11 C. J. 975:

"A college or university is usually deemed to be a public institution or corporation and subject, as such, to the plenary control of the state, where it was instituted by the state and maintained out of state funds, or by means of the aid extended by the national government for instruction in agriculture and the mechanical arts.  In such cases the corporation, if one is created, is a mere agent or instrumentality of the state to carry out the public purpose."

Also, see 27 R. C. L. 134, 135; Thompson on Corporations (3 ed.), § 26; *Regents of the University of Nebraska* v. *McConnell,* 5 Neb. 423; *Head* v. *University of Missouri,* 47 Mo. 220; *Phillips* v. *University of Virginia,* 97 Va. 472 (34 S. E. 66, 47 L. R. A. 284).

Having held that the Regents of the University, although a public corporation, is nevertheless an agency of the state and not an independent legal entity, we next inquire: Does the legislative act authorizing the construction of a dormitory from net rentals contravene the constitutional provision relative to limitation of indebtedness?  We think the act is reasonably susceptible of the construction which the Regents have given it as disclosed by their resolution. It does not purport to authorize the Board of Regents to contract any indebtedness other than to pledge, on behalf of the University, the net income from the rentals of the building.  The Regents are not taking from any existing fund the revenue of the University, but propose that the dormitory to be erected will earn enough to pay the principal and interest of the bonds.  Indeed, the building is the exclusive source from which the payment of the bonds can be made. The resolution cites, and it should be so stipulated

in the bonds, that "said bonds be limited in payment to the special fund to be derived from said building, and from that fund only." In the event the net income from rentals is not sufficient to pay principal and interest on the bonds, there is no resulting liability against the University or the state. The act does not contemplate nor provide for the levy of any additional tax. However, the Board of Regents, as expressed in its resolution, must "use its best efforts to the end that said fund will be sufficient to pay said bonds and the interest thereon when due."

2. The only liability is against a special fund which is to be made up exclusively of net rentals. No violation of the constitutional provision against indebtedness is involved. This principle is recognized in *Brockway* v. *Roseburg*, 46 Or. 77 (79 Pac. 335), wherein the court said:

" * * there are decisions holding that where, at the time a contract is made by a municipality, a fund on hand is appropriated for its payment, or where a fund has been provided for such payment, although not collected, or an appropriation has been made of an anticipated revenue, and the contract is made payable out of such fund or revenue, it does not create an indebtedness, within the meaning of the constitution or charter. In such case there is no general liability against the municipality, but the holder of the warrant or other contracting party agrees to look to the special fund for payment."

In the instant case, we are deciding only the precise question before the court and are not undertaking to say to what extent the "special fund doctrine" should be applied. In support of this conclusion see *Winston* v. *City of Spokane*, 12 Wash. 524 (41 Pac. 888); *Faulkner* v. *City of Seattle*, 19 Wash. 320 (53

Pac. 365); *Griffin* v. *City of Tacoma*, 49 Wash. 524 (95 Pac. 1107); *Brockenbrough* v. *Board of Water Commrs.*, 134 N. C. 1 (46 S. E. 28); *Evans* v. *Holman*, 244 Ill. 596 (91 N. E. 723); *Swanson* v. *City of Ottumwa*, 118 Iowa, 161 (91 N. W. 1048, 59 L. R. A. 620); *Connor* v. *City of Marshfield*, 128 Wis. 280 (107 N. W. 639). Some of these cases go further than we are prepared to hold in defining what constitutes an indebtedness within the meaning of similar constitutional provisions. For a criticism of the Iowa cases see *City of Ottumwa* v. *City Water Supply Co.*, 119 Fed. 315 (59 L. R. A. 604).

Our attention is directed to *Fell* v. *City of Coeur d'Alene*, 23 Idaho, 32 (129 Pac. 643, 43 L. R. A. (N. S.) 1095), which is claimed to be contrary to the rule which we have announced. Careful analysis of the facts in that case makes it readily distinguishable. There the City of Coeur d'Alene contracted with the holders of the bonds to pay into a special fund, in the event the water rentals were insufficient, such an amount as to meet the principal and interest on the bonds at maturity. That case can also be distinguished from the one at bar in that the ultimate payment of the bonds of necessity would be, or might be, made from funds derived from taxation. The Constitution of Idaho also specifically prohibits anticipating the income of revenue for more than the current year.

*State ex rel. University of Utah* v. *Candland*, 36 Utah, 406 (104 Pac. 285, 140 Am. St. Rep. 834, 24 L. R. A. (N. S.) 1260), is not in point. In commenting on the legislative act under consideration, the court there said:

"There is not the slightest attempt in the act to conceal the fact that the debt authorized by it (uni-

versity) must be paid, both principal and interest, from appropriations made from the funds of the state, which are obtained by general taxation."

Such liability on the part of the state is not here involved.

We conclude that neither the funds of the state nor the University fund, nor any other funds now controlled by or belonging to either the state or the University, will, in any way, be impaired or drawn upon in the event that this dormitory is constructed under the proposed plan. Plainly no debt is created within the meaning of the Constitution.

3. We see no merit in the contention that the Board of Regents have no power under the act to issue bonds: *Hall* v. *Hood River Irr. Dist.*, 57 Or. 69 (110 Pac. 405).

The decree of the lower court is affirmed.

AFFIRMED.