KATIE HELSLEY, RESPONDENT, v. GEORGE D. FERGUSON, ADMR., ETC., APPELLANT.—67 S. W. (2d) 103.

Kansas City Court of Appeals. January 8, 1934.

James A. Park and W. W. Blain for respondent.

Ross E. Feaster and Montgomery, Martin & Montgomery for appellant.

BLAND, J.—This is a suit against the administrator of the estate of Orlando B. Canaday, deceased, to recover the reasonable value of the services rendered by the plaintiff to Olivia Canaday, a daughter of the deceased. There was a verdict and judgment in favor of plaintiff in the sum of $7,222, and defendant has appealed.

The facts show that Olivia Canaday was born in the latter part of 1903 at the home of her parents on a farm near Windsor; that her mother, who was the sister of plaintiff, died about three weeks after the child was born; that soon thereafter the father took the child to plaintiff at her home in Windsor to be reared and that she resided with plaintiff and her husband from that time until the death of the child in 1919; that the child was not strong and required considerable care and attention on the part of plaintiff. It is admitted that plaintiff treated her with kindness and affection and that plaintiff's services were entirely satisfactory.

The evidence further shows that Orlando B. Canaday and the child lived at the home of plaintiff and her husband; that he paid board for himself and furnished a cow for the family use; that when the

child was ten or eleven years old plaintiff and her husband moved to California and took her with them; that they remained in California about a year and moved back to Windsor; that after staying there for awhile they again went to California, where they remained for a few months and then moved to Kansas City, where the child took sick and died on April 26, 1919.

The evidence shows that the father furnished money for clothes for the child and probably for some expenses, such as music lessons, but that he, at no time, paid anything or made provision for the payment to plaintiff for her services for taking care of his child.

In the petition plaintiff alleges that Orlando B. Canaday delivered the child when she was three weeks old to the plaintiff, telling her that he would pay her well for taking care of the child; that after continuing for nearly five years his promises to pay plaintiff well for taking care of the child, he promised to pay plaintiff for such services by providing for her well in his will; that in pursuance of such promises plaintiff kept the child from November 20, 1903, until her death and performed the services for the child under the contract and promises that "he, the said Orlando B. Canaday would pay plaintiff well for said services and pay her by leaving her his property at his death in his will;" that Canaday continued to promise plaintiff that she would be paid well for her services and that he would pay her in his will; that Canaday told various persons, who communicated his statements to plaintiff, to the effect that he was going to pay plaintiff well and was going to pay her by leaving her his property ·in his will; that after the death of the child he continued to make promises to pay plaintiff well by leaving her his property in his will; that she (plaintiff) accepted the proposals and offers of Canaday to pay her and to pay her in his will and performed her part of the agreement; that Canaday violated his part of the agreement by failing to provide for plaintiff in his will and failed and neglected to leave plaintiff his property or a sufficient sum to pay plaintiff for her work and labor and left plaintiff without any compensation whatever therefor.

To prove the contract plaintiff introduced the following evidence.

Bell Helsley testified that Canaday told her that on account of her kindness to his child plaintiff "would get the biggest part of his estate" at the end of his life. Lee Douglas testified that he heard Canaday say "he was going to give her (plaintiff) a piece of property" for taking care of the child. Violetta Millhiser testified that Canaday told her, "I intend to remember her (plaintiff) in my will, and he said, he intended to leave her money and remember her because she had been a mother to his child." Gertrude Ransome testified that Canaday told her:

"I can never repay Aunt Katie (plaintiff) for the care she give Olivia, and the care she has been; and he says, Well, I haven't done

anything for her, except to help them with the dressing of Olivia, but says, I intend to, when I get my affairs straightened up, and I am through with my estate, I expect that she will be paid for what she has done for me."

W. R. Hall testified that Canaday told him that he had not paid plaintiff "but I am going to pay her and pay her well" and that "he was going to leave Olivia and Katie all my property when I die." Eula Keith testified that Canaday told her that "he expected to will his property to Mrs. Helsley (plaintiff) and Olivia" and that "he promised Mrs. Helsley to pay her for taking care of Olivia but he had not done so and he expected to take care of her in his will;" that this was short time after the death of his child.

John Swisher testified that Canaday told him that he was going to take care of the plaintiff in his will for looking after his child "either in property or money." Finis Miller testified that Canaday told him that he intended to "leave what he had to Mrs. Helsley and her daughter . . . for the maintenance of his child."

Plaintiff, Katie Helsley, was not permitted to testify because the other party to the contract was dead. Fred Helsley, plaintiff's husband, attended the trial but he was not placed upon the stand and did not testify. The undisputed evidence shows that Canaday made no provision for plaintiff by will or otherwise.

The defense was that the contract for keeping the child was between Canaday on one hand and plaintiff and her husband on the other, and in this connection placed upon the stand a daughter of plaintiff and her husband, who testified that she asked Canaday to permit her to keep the child; that her father and mother were present and heard the conversation; that Canaday said, "No, he had made arrangements with Fred and Katie, that is my mother and father, to take care of her."

It is insisted by the defendant that the court erred in refusing his instruction in the nature of a demurrer to the evidence for the reason that the evidence shows that the contract was made between Canaday on one hand and plaintiff and her husband on the other while plaintiff pleaded the contract in her petition as having been between Canaday and her. From our statement of the testimony it is apparent that there was ample evidence either way for the consideration of the jury upon this question.

It is next insisted that the instruction should have been given for the reason that plaintiff pleaded that the contract between her and Canaday was that she was to be given a legacy in his will and that this legacy should consist either of all of his property or a legacy in a sum equal to the reasonable value of her services to the child and that, as plaintiff was to have a legacy, she could not be paid until the creditors and the cost of administration of the estate were first paid and that plaintiff failed to show whether there would be

any amount left of the estate after paying these expenses from which she might be paid.

In this connection, among other cases, defendant cites that of Hall v. Getman, 121 Mo. App. 630. An examination of that case shows it not to be in point. In that case plaintiff rendered services to the deceased and his wife under a contract that they would leave her all of their property which was not done. In that case it was held that plaintiff could either bring a suit against the heirs in equity for the specific performance of the contract or a suit at law against the administrator for the reasonable value of her services, recovery being limited to the value of the property promised her in the contract, that such a contract contemplated that the demands of the creditors of all classes should be satisfied in full out of the estate before plaintiff should recover anything.

In the case at bar it would appear that it was the intention of plaintiff to allege in her petition the contract in different ways. First, that deceased agreed to provide well for her in his will or pay her in his will. Second, that he would pay her by leaving her his property at his death in his will. However plaintiff abandoned the second allegation in the petition by submitting the case to the jury in the following instruction:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff and the decedent, Orlando B. Canaday, entered a verbal contract, whereby plaintiff was to support, educate and care for the child of the said Canaday, and the said Canaday was to pay plaintiff for such care and services to said child, by providing for plaintiff in his will, if you so find the facts to be; and if you further find from the evidence that plaintiff did support, educate and care for said child, and that plaintiff has fully performed her part of said contract, if any; and if you further find and believe from the evidence that the said Canaday did not pay plaintiff for care of the said child during his lifetime and did not provide for plaintiff a reasonable compensation for said services to said child in his will, if you so find the facts to be, then your verdict must be for the plaintiff in such sum as you may believe from all the evidence will fairly compensate plaintiff for her services under said contract, if any, together with six per cent interest on said sum from the 26th day of April, 1919, down to the date of your verdict."

We think there is no question but that the petition was such as to authorize the submission of the case to the jury under the above instruction. We do not believe that, under the circumstances surrounding the contract, the agreement by Canaday to pay for the care of the child, by providing for plaintiff in his will, was an agreement to leave plaintiff a legacy. The sense in which the words "to pay" was used in the contract meant to pay in money (48 C. J., p. 572), and to pay by providing for plaintiff in his will meant that

payment should be postponed until his death and should be made by a provision in his will which would be an amount sufficient to pay plaintiff in money for the reasonable value of her services for the care of the child. In other words, plaintiff was to become a general creditor and not a legatee under the will.

Complaint is made of the refusal of the court to permit the introduction of various checks and certificates of deposit, which, upon their face, appear to have been given by Canaday to plaintiff's husband, and various notes of the husband that Canaday had paid. These checks and notes run from 1906 to 1921 inclusive and aggregate about $18,000. The administrator found these checks and notes among the papers of the deceased. There was no effort made to show in what connection the checks and certificates were given and the notes paid, the offer being merely to introduce them in record without explanation, other than that appearing from their face plus an offer to prove that Helsley received the money represented by the checks, notes and certificates of deposit and that all of them were paid by Canaday. The offer of this proof was made as tending to prove the contract was between Canaday and Helsley and his wife, jointly, thus tending to disprove the allegation in the petition that the contract was between Canaday and Mrs. Helsley, alone.

A great many of these checks are in the sum of three dollars and it is admitted that that sum was the amount that Canaday paid per week for his board while living with the Helsleys. It would appear that the sum of $18,000 was far in excess of any amount that Canaday might owe for services to his daughter and these transactions had between Canaday and Helsley may very well have been in connection with business dealings between them having nothing to do with the care of the child. We think that the court properly excluded them under the circumstances.

Complaint is made of plaintiff's instruction for the reason that it permits the jury to render a verdict for interest from the 26th day of April, 1919 (the date of the death of the child), to the date of the verdict.

This contention must be sustained. The verdict shows that the jury awarded $4,000 for services and interest thereon in the sum of $3,222. There is no evidence that Canaday promised to pay interest. There is no evidence of any demand upon the administrator for payment of anything and the contract pleaded and submitted shows that the services were not to be paid for until Canaday's death. It is quite apparent that no suit could have been brought against Canaday during his lifetime on this contract and we are unable to see upon what theory interest is recoverable, except that accruing after the filing of the suit. [See Sec. 2839, R. S. 1929; Ryans v. Hospes, 167 Mo. 342, 362, 363; Wolff v. Mathews, 98 Mo. 246; Citizens

National Bank v. Donnell, 195 Mo. 564, 571, 572.]   By computation we find that amount to be $38.

If plaintiff within ten days will remit from the face of the judgment the sum of $3,184, representing interest allowed by the jury in excess of that to which she is entitled, the judgment will be affirmed, otherwise the judgment will be reversed and the cause remanded. All concur.