15403

KELLER *ET AL.* v. KELLER *ET AL*

(20 S. E. (2d), 104)

482

De-cember, 1940.

*Mr. J. Moore Mars* and *Mr. Ralph J. Syfan,* both of Abbeville, S. C., counsel for appellants,

*Mr. J. M. Nickles* and *Mr. J. P. Nickles,* both of Abbeville, S. C., counsel for respondents,

May 5, 1942.

The Court filed a *Per Curiam* order, with Mr. Associate Justice Fishburne dissenting.

*Per Curiam.*

On October 12, 1937, a written instrument purporting to be the last will and testament of Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon, deceased, was admitted to probate in common form in the Probate Court for Abbeville County.

In compliance with a notice served by D. W. Keller, one of the heirs-at-law of the said Mrs. Haddon, L. W. Keller and C. W. Keller, proponents of said will and the named executors thereof, on October 15, 1938, filed and served their petition asking that said will be probated in due form of law. The said D. W. Keller and other heirs-at-law of the said Mrs. Haddon were named defendants in the petition. D. W. Keller filed his answer to the petition alleging that the said Mrs. Haddon did not have the mental capacity to make a will and that the execution of the instrument offered for probate was procured through coercion, undue influence and fraud.

The matter was heard before the Judge of Probate for said county, who passed an order admitting said will to probate in due form of law. Defendants appealed to the Court of Common Pleas and the matter was heard *de novo* before Honorable G. Duncan Bellinger and a jury at the December, 1940, term of the Court of Common Pleas for Abbeville County. After all testimony was in and at the conclusion of his charge, the presiding Judge directed the jury to answer the following questions:

"1. Was the paper propounded herein as the last will and testament of Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon executed in accordance with law?

"2. Did Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon at the time of the signing of the paper herein propounded as her last will and testament, have sufficient mental capacity to make her will and understand the contents?

"3. Was Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon unduly influenced into making the paper now offered as her last will and testament?

"4. Is the paper propounded herein by L. W. Keller and C. W. Keller, executors of the last will and testament of Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon the true last will and testament of Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon?"

The jury answered "Yes" to the first question and "No" to the second question. The third and fourth questions were not answered. Proponents of said will moved for a new trial upon five grounds:

"1. That the verdict of the jury is contrary to the law and evidence.

"2. That the answers to the only two questions answered by the jury are entirely inconsistent with each other.

"3. That the answer to the second question is not supported by the evidence and entirely inconsistent therewith.

"4. That the remarks of counsel for defendants, D. W. Keller, addressed either to the jury or to the court in the presence of the jury, when the jury came out for further instructions, were misleading to the jury and calculated to prejudice the rights of the plaintiffs.

"5. That the fourth question submitted to the jury should have been answered, there being a peculiar necessity for such answer to clear up the inconsistency in the answers to the first two questions."

On the 27th day of August, 1941, Judge Bellinger filed his order in which he overruled appellants' motion for a new trial and ordered: "That the order of the Judge of Probate for Abbeville County, admitting the alleged will of Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon to probate in solemn form of law be and the same is hereby set aside and vacated, and the instrument in writing alleged to be the true last Will and Testament of Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon be declared not to be the true last will and testament of the said Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon."

The appeal to this Court is based upon five exceptions, which, according to appellants' brief, raise these three questions:

"1. Is a finding of lack of mental capacity consistent with a finding that a will was executed in accordance with law?

"2. Should the jury have answered the fourth question?

"3. Were the remarks of counsel for defendants improper and prejudicial to the rights of plaintiffs?"

In our opinion Judge Bellinger in his order refusing a new trial correctly disposed of the first question. He said:

"It is my opinion that when the two questions are properly construed that the jury's answers thereto are wholly consistent with each other.

"The first question was: 'Was the paper propounded herein as the last Will and Testament of Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon, deceased, executed in accordance with law?' The true purport and meaning of the question was, did the execution of the Will comply with the formalities prescribed by Section 8916 of the Code. The jury answered that question in the affirmative, that is, they found that the formalities prescribed by Section 8916 had been complied with. The question and answer related solely to the manner of execution.

"The second question was: 'Did Mrs. Sarah Emeline K. (Mrs. S. E.) Haddon, deceased, at the time of signing the paper propounded herein as her last Will and Testament, have sufficient mental capacity to make her will and understand its contents?' This latter question related solely to her mental capacity and ability at the time of execution of the Will in question. The jury answered the second question in the negative. When we consider that the law permits assistance in complying with the formal requirements of Section 8916, it is not only not inconsistent, but wholly consistent, that the formalities of Section 8916 could be complied with by a person lacking mental capacity sufficient to execute a valid Will."

Judge Bellinger also correctly disposed of the second question when he announced in the presence of counsel for both parties and before the jury were discharged that it was unnecessary for them to answer the fourth question. The jury having answered the second ques-

tion submitted to them in the negative, a negative answer to the fourth question necessarily followed as a matter of law.

The third question raised by appellants' exceptions is of more serious import. After the jury had deliberated for a considerable length of time they returned to the Court room at the request of the presiding Judge. Thereupon the following proceedings were had:

"The Court: Is it a question of law bothering you, Gentlemen, or a question of evidence, of fact?

"Foreman: Well, there is a little question of law, if we can ask this.

"The Court: Yes, sir.

"Foreman: The thing that seems to be the question, the first question, is as to whether the will was executed in legal form or not; as to whether those sheets have to be marked.

"The Court: No, sir, they do not have to be marked. It just has to be signed on the last page. If it was signed as it appears to be signed, in the presence of the testatrix, the one who made it, and the witnesses in the presence of each other signed their names in the presence of the testatrix, and in the presence of each other, that would be sufficient so far as the execution is concerned.

"Foreman: We wonder if you could read that part of the law there again that says about the contents of a will and about the testatrix knowing exactly what was in it.

"The Court: Yes, sir, I can give that to you. You understand, now, how the law requires a will to be executed. It must be executed, that is, signed by the testatrix or the maker of the will, or her name signed by someone at her direction. If she cannot write, she touches the pen and makes the signature in that way, and that must be done in the presence of the witnesses, and the witnesses must sign their names in the presence of the maker of the will and in the presence of each other. Now, if a will is executed in that manner, then the law presumes that she had knowledge of the will by the fact that she signed the will or had it signed

at her direction. The law presumes that she had knowledge of the contents of the will; that it carried out her intention as to the way or to whom the property was intended to go.

"Foreman: That covers part of it, your Honor. There was another question as to whether it was necessary that she know everything in the will; as to whether it should be read to her entirely before it was signed.

"The Court: No, sir, it was not necessary for her to have it read over to her before she signed it, provided that the will is prepared in the manner and by the directions that she has given to have the will prepared. In other words, to put it in a little more simple form, that will must contain her desires as to the disposition of her property, and if she has given directions as to how it should be drawn, the beneficiaries and what they are to receive, if the evidence satisfies you that that was done, then it would not be necessary for her to have to read it. Is there anything else?

"Mr. Nickles: I think the juror asked if it was necessary for her to know all in the will, and I think your honor answered that in the negative. Certainly it is necessary for her to know all that is in the will.

"The Court: I didn't answer exactly in the negative. I say that she must know that the will carries out her intentions as to the property that she expects to pass under the will, the beneficiaries, and the parts that they are to receive. Now, what else have you in mind? I don't think that leaves out anything except the formal parts.

"Mr. Nickles: Should she know everything in the will, I think the juror asked. Is that correct?

"Foreman: Yes, sir, I asked if she should know the contents of the will.

"Mr. Nickles: That is it. That could not be in the negative.

"The Court: She has got to know what property she wants to pass under the will and know it is in there. She has

got to know that it is in there, the ones that are to receive it, and the part they are to receive. I think that fully covers it.

"Mr. Nickles: I think that satisfies the jury.

"The Court: Is that what you wanted to know?

"Foreman: Yes, sir.

"The Court: As I say, if she is of sound mind, that is, has the mental capacity as I have defined to you, and if she is under no undue influence of anyone, why the execution of the will would presume that she knew the contents of the will.

"Foreman: Well, your Honor, just one other little question there. As I understand it, you read from the law there that she could be of sound mind, yet could be in a very bad state of health and might not be as strong as she once had been and still it would be legal.

"The Court: Yes, sir, that is correct. One may be weak in mind, but so long as it is not to the extent that she does not understand her acts, it does not make any difference how weak her mind is so long as she does not reach that point where she would not understand her acts, and what would become of her property, who would receive it, and those things.

"Mr. Nickles: I think not necessarily of unsound mind, but if she was in a state of coma and unconscious at the time the will was being executed and not knowing what was being done."

From the foregoing it appears that counsel for respondents without invitation and without asking for permission to do so intervened to take issue with the presiding Judge with respect to his instructions, to address himself directly to the jury and to announce, "I think that satisfies the jury." He did not stop there. When the jury asked for further instructions and the presiding Judge correctly and clearly instructed them with respect to the point in question, counsel for respondents proceeded to make what in effect was a closing argument on the facts of the case. The

remarks and conduct of counsel for respondents was out of order, improper and prejudicial, and the motion for a new trial on that ground should have been granted.

The order and judgment appealed from are reversed and the case remanded to the Court of Common Pleas for Abbeville County for a new trial.

MR. CHIEF JUSTICE BONHAM, and MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE G. B. GREENE, ACTING ASSOCIATE JUSTICE, concur.

MR. ASSOCIATE JUSTICE FISHBURNE (dissenting): In my opinion, the judgment should be affirmed. I find no substantial ground in the record which justifies the conclusion that the jury was misled or that the rights of the plaintiffs were prejudiced.

Immediately following the last quoted remarks of Mr. Nickles in the leading opinion, the record thus continues:

"The Court: I think I cover that when I say that she must know what her acts were, what she was doing there, that she was making a will, that her property was passing under the will, that it was passing to the beneficiaries she desired to get it, and in the proportion she desired them to get it. Now, if she had the mental capacity to know those things, then she had the capacity under the law to make a will. Now, one might have the mental capacity to make a will, but if undue influence is exerted upon her, then that would not be a valid will. If a stronger mind prevails upon her to dispose of her property in a way that she would not do otherwise, that would be undue influence although she might have full mental capacity to make a will. But if a stronger mind caused her to make a will that she would not have otherwise made, through coercion, flattery, fear, or anything that might overawe or put pressure on the other mind by a stronger mind, then that would be made by undue influence.

"Foreman: Yes, sir.

"The Court: Is there anything further, Gentlemen, from any of you?

"Foreman: I think that is all right now."

The alleged error is too unimportant and inconsequential to authorize a new trial. In my opinion, the trial Judge exercised a sound legal discretion in overruling the motion.