OF

# NORTH CAROLINA

AT

## RALEIGH

---

## FALL TERM, 1945

---

GREENSBORO-HIGH POINT AIRPORT AUTHORITY v. W. CLARENCE
JOHNSON, Treasurer of GUILFORD COUNTY,
and
GREENSBORO-HIGH POINT AIRPORT AUTHORITY v. HARGROVE
BOWLES, Treasurer of CITY OF GREENSBORO,
and
GREENSBORO-HIGH POINT AIRPORT AUTHORITY v. LOIS WELBORN,
Treasurer of CITY OF HIGH POINT.

(Filed 31 January, 1946.)

**1. Municipal Corporations § 41: Taxation § 5—**

The establishment and maintenance of an airport is a public purpose
within the objects of municipal expenditure, and a city may appropriate
funds therefor in proper instances.

**2. Same—**

The establishment and maintenance of an airport is not a necessary
municipal expense and therefore a city may not incur debt or levy taxes
therefor without submitting the question to a vote.

**3. Municipal Corporations § 2—**

The Legislature has power to create a municipal authority to construct,
maintain and operate an airport.

**4. Municipal Corporations § 41—**

A county and cities located therein may lawfully join in the construc-
tion, maintenance and operation of an airport if each of them is benefited
by it. G. S., 63-4.

1—226

**5. Appeal and Error § 40d—**

Where the agreed facts contain a stipulation that the appropriations in question were made by defendant municipalities out of funds in their hands not derived from *ad valorem* taxes, but mainly from the sale of property, the Supreme Court on appeal is bound by the stipulation.

**6. Constitutional Law § 8a—**

Our Constitution is a limitation and not a grant of legislative power, and all powers not withdrawn are reserved to the people to be exercised by their representatives.

**7. Constitutional Law § 8d—**

Municipalities are creatures of the Legislature, and the Legislature in its discretion may create *quasi*-municipal corporations to perform ancillary municipal functions, and grant to such corporations even greater powers than those absolutely necessary to perform the particular function, and give the municipality only such control over the corporation as the Legislature may deem expedient.

**8. Municipal Corporations § 41: Taxation § 9—**

A municipal corporation may appropriate funds to a *quasi*-municipal corporation created by the Legislature when such corporation is an agency of the municipality in the performance of a public function having a reasonable connection with the convenience and necessity of the contributing municipality.

**9. Same—**

In determining whether the purpose of a *quasi*-municipal corporation is a public purpose as a predicate for the appropriation of municipal funds in its aid, the terms of the creating act are not controlling, but the courts will ascertain whether its purpose in fact has a reasonable relationship to the convenience and necessity of the contributing municipality.

**10. Same: Greensboro-High Point Airport Authority held agency of the municipalities for performance of public services.**

Construing ch. 98, Public-Local Laws of 1941, as amended by ch. 601, Session Laws of 1943, *in pari materia* with ch. 206, Session Laws of 1945, *it is held:* that the Greensboro-High Point Airport Authority is an agency not only of Guilford County but also of the municipalities of Greensboro and High Point in the operation and maintenance of the airport, notwithstanding that the creating act does not so stipulate, since the Act of 1941 does specifically authorize the said cities to contract with the authority and provides that each of the municipalities appoint one member of the board of directors of the said authority, and ch. 206, Session Laws of 1945, gives complete and express recognition of the authority as an agency of Greensboro and High Point as well as of Guilford County, and it being apparent that in fact the authority does function to perform such public purpose for each of the municipalities and that the Legislature intended to constitute it their agency, the provisions of G. S., 63-4, permitting the three municipalities to act jointly in such undertaking not having been repealed or modified by the supplementary acts.

**11. Mandamus § 2a—**

The treasurers of municipalities act in a ministerial capacity in the payment of appropriations lawfully made by their respective boards and governing bodies, and therefore *mandamus* will lie to compel such payment.

BARNHILL, J., concurring in part and dissenting in part.
WINBORNE, J., joins in concurring opinion of *Barnhill, J.*
DENNY, J., concurring.

APPEAL by defendants from *Sink, J.,* at Chambers in the courthouse in Greensboro, N. C., 19 October, 1945.

The three cases above entitled, because of their similarity in factual and legal features and interconnected interests, were consolidated for hearing, and by consent of all parties heard by Judge Hoyle Sink on agreed facts without a jury.

The actions are brought for *writs of mandamus* to compel defendants, treasurers of Guilford County, the City of Greensboro, and the City of High Point, respectively, to pay to the plaintiff appropriations made by their respective boards and governing bodies to plaintiff from funds now in their hands. It is conceded by the defendants that plaintiff is entitled to the writs if the appropriations were within the constitutional and lawful power of the individual and several boards to make.

Omitting purely formal matter, the statement of fact in appellants' brief, to which there is no objection, may be adopted as a concise summary of the pertinent facts. Where necessary, this will be supplemented from the stipulations of the parties.

"The plaintiff is a body politic and corporate of the State of North Carolina, created, organized and existing under and by virtue of Chapter 98, Public-Local and Private Laws of 1941, and amendments thereto, and is now the owner of and in possession of all of the property, real and personal, used in the operation of the Greensboro-High Point Airport and is now operating said airport.

"Guilford County is a body politic and corporate of the State of North Carolina, and prior to June 20, 1942, owned and operated the Greensboro-High Point Airport. The defendant, W. Clarence Johnson, is the duly elected qualified and acting Treasurer of Guilford County. On the 23rd day of June, 1945, the County Commissioners of Guilford County adopted an appropriation resolution for the fiscal year 1945-1946, which contained an appropriation of $20,000 for the Greensboro-High Point Airport, to be paid wholly and entirely from funds derived from sources other than *ad valorem* taxes. Plaintiff has made demand upon said W. Clarence Johnson, as Treasurer of Guilford County, for the payment of said appropriation to it which was refused by him because he had

been advised that the County Commissioners of Guilford County could not lawfully make said appropriation, and that he as Treasurer, therefore, had no legal right to make such payment.

"City of Greensboro is a municipal corporation duly created and chartered by the General Assembly of the State of North Carolina, Chapter 37, Private Laws of 1923, and amendments thereto, and the defendant, Hargrove Bowles, is the duly appointed qualified and acting Treasurer of the City of Greensboro. The City Council of the City of Greensboro, on the 19th day of September, 1944, created a Capital Reserve Fund. On the 3rd day of July, 1945, the City Council of the City of Greensboro adopted an ordinance authorizing the withdrawal of $27,000 from said Capital Reserve Fund for the purpose of making improvements at the Greensboro-High Point Airport, said funds being from receipts from revenues derived from sources other than *ad valorem* taxes, which are not pledged or otherwise applicable by law to the payment of existing debt of the City of Greensboro. On the 4th day of September, 1945, the City Council of the City of Greensboro adopted a resolution, finding that the legal requirements for the withdrawal of said funds, including the approval of the Local Government Commission, had been met and appropriated said sum of $27,000 to the Greensboro-High Point Airport Authority. Plaintiff has made demand upon said Hargrove Bowles, as Treasurer of the City of Greensboro, for the payment of said appropriation to it which was refused by him because he had been advised that the City Council of the City of Greensboro could not lawfully make said appropriation, and that he, as Treasurer, therefore, had no legal right to make such payment.

"City of High Point is a municipal corporation duly created and chartered by the General Assembly of the State of North Carolina, Chapter 107 of the Private Laws of 1931, and amendments thereto, and the defendant, Lois Welborn, is the duly appointed, qualified and acting Treasurer of the City of High Point. The City Council of the City of High Point, on the 10th day of August, 1945, adopted a budget ordinance for the City of High Point for the fiscal year 1945-1946, which contained an appropriation for the Greensboro-High Point Airport Authority of $25,000 from funds derived from the sale of properties and unappropriated surplus revenues from sources other than the levy of *ad valorem* taxes which are not pledged or otherwise applicable by law to the payment of the existing debt of the City of High Point. Plaintiff has made demand upon said Lois Welborn, as Treasurer of the City of High Point for the payment of said appropriation to it which was refused by her because she had been advised that the City Council of the City of High Point could not lawfully make said appropriation, and

that she as Treasurer, therefore, had no legal right to make such payment."

Certain statutes are cited in the stipulation as necessary to a determination of the controversy, which are here reproduced by direct quotation in part, or summarized. Portions considered in the argument as more important to decision are printed in italics. Numerals relate to sections and subsection.

Public-Local Laws 1941, chapter 98, as amended by 1943 Session Laws, chapter 601.

The act is captioned: "AN ACT ENABLING THE COUNTY OF GUILFORD TO ESTABLISH AN AIRPORT AUTHORITY FOR THE MAINTENANCE OF AIRPORT FACILITIES IN THE COUNTY OF GUILFORD FOR THE CITIZENS OF GREENSBORO, HIGH POINT, GUILFORD COUNTY AND VICINITY."

(1) It creates the "Greensboro-High Point Airport Authority" as a body corporate, with powers and jurisdiction enumerated; (2) to consist of five members, two of whom shall be resident voters of Greensboro, two resident voters of High Point, and one from Guilford County at large. One each of these is appointed by the City Council of Greensboro and the City Council of High Point, from resident members, and three are appointed by the Commissioners of Guilford County. Their terms are fixed, and they take oaths of office. (3) They constitute a board of directors and pass by-laws relating to management. (4) Power is given them to "purchase, acquire, establish, construct, own, control, lease, equip, improve, maintain, operate and regulate airports or landing fields" within Guilford County; and to "purchase, improve, own, hold, lease and/or operate real or personal property"—to borrow money, issue bonds secured by mortgages *with* the consent of Guilford County, upon any property held or to be held by it. To sue and be sued; to acquire by purchase lands for construction and maintenance and operation of airports anywhere in Guilford County; to make contracts and hold personal property, and acquire interest in any airport existing in Guilford County. (4-1) To make rules and regulations and adopt schedule of fees and charges not in conflict with State law or rules and regulations of the Civil Aeronautics Administration of the Federal Government. (4-2) To issue bonds, notes or securities upon approval of Guilford County Commissioners and Local Government Commission; (4-3) to dispose of property upon approval of the Commissioners of Guilford County; (4-4) to purchase insurance; (4-5) to authorize or deny or withdraw the right of any person, firm or corporation to construct, operate or maintain any airport or landing field within Guilford County.

"Sec. 5. The Airport Authority is hereby authorized and empowered to acquire from the County of Guilford, the Cities of Greensboro, and High Point, by agreement therewith, and such county and cities are

hereby authorized and empowered to grant and convey either by gift or for such consideration as it may be deemed wise, or any real or personal property which it now owns or may hereafter be acquired, and which may be necessary for the construction, operation and maintenance of any airport located in the County of Guilford.

"Sec. 6. Any lands acquired, owned, controlled or occupied by the said Airport Authority shall, and are hereby declared to be acquired, owned, controlled and occupied for a public purpose."

Sec. 7 authorizes the acquisition of private property for airport purposes by purchase, gift, devise or exercise of the right of eminent domain.

Sec. 8 requires annual reports to Commissioners of Guilford County. "The said Airport Authority shall be regarded as the corporate instrumentality and agent for the County of Guilford for the purpose of developing airport facilities in the County of Guilford, but it shall have no power to pledge the credit of the County of Guilford, or any subdivision thereof, or to impose any obligation upon the County of Guilford or any subdivision thereof, except and when such power is expressly granted by statute or the consent of the County of Guilford.

"Sec. 9. All rights or powers given to the counties or municipalities by the statutes of North Carolina, which may now be in effect or be enacted in the future relating to the development, regulation and control of municipal airports and the regulations of aircraft are hereby vested in the said Airport Authority, and the County of Guilford may delegate its powers under the said acts to the Authority and the Authority shall have concurrent right with the County of Guilford to control, regulate and provide for the development of aviation in the County of Guilford."

Sections 10, 11 and 12 omitted as unessential.

1945 Session Laws, chapter 137, authorizes investment of funds in certain named securities, purchase of its outstanding bonds and authorizes the Authority to operate on any airport premises "restaurants, agricultural fairs, tracks, motion picture shows, and other amusements."

1945 Session Laws, chapter 206, captioned as follows: "AN ACT ENABLING GUILFORD COUNTY AND CERTAIN MUNICIPALITIES LOCATED THEREIN TO ISSUE BONDS AND LEVY AD VALOREM TAXES FOR AIRPORTS AND AIRPORT FACILITIES IN GUILFORD COUNTY"—purports to authorize Guilford County and the cities of Greensboro, High Point and Gibsonville to issue bonds, notes, and certificates of indebtedness, when authorized by popular vote in the respective county and municipalities, and levy ad valorem taxes "for the promotion, purchase, operation, repair, maintenance, expansion or construction of airports, airport facilities, and parking areas in Guilford County. It further provides that the act shall not repeal any of the provisions of chapter 98 of the Public-

Local Laws of 1941, as amended by chapter 601 of the 1943 Session Laws of North Carolina, and shall not be construed as a limitation on powers possessed by the county or municipalities involved; but further provides that all laws and clauses of laws in conflict with the Act are repealed "notwithstanding any charter provision of any city or town or any public, local or private act."

Upon the hearing Judge Sink granted writs of *mandamus* as prayed for, and all of the defendants excepted and appealed.

*Thomas C. Hoyle for W. C. Johnson, Treasurer of Guilford County, appellant.*

*H. C. Wilson for Hargrove Bowles, Treasurer of City of Greensboro, appellant.*

*G. H. Jones for Lois Welborn, Treasurer of City of High Point, appellant.*

*D. Newton Farnell, Jr., for plaintiff, appellee.*

SEAWELL, J.   Preliminary to a discussion of the questions involved in the appeal, there are certain postulates which must be conceded:

(a) The establishment and maintenance of an airport is a public purpose within the objects of municipal expenditure.   *Goswick v. Durham,* 211 N. C., 687, 191 S. E., 728; *Turner v. Reidsville,* 224 N. C., 42, 29 S. E. (2d), 211; *City of Reidsville v. Slade,* 224 N. C., 48, 29 S. E. (2d), 215.

(b) It is not a necessary expense, however, and debt may not be incurred or taxes levied for that purpose without a vote of the people. *Sing v. Charlotte,* 213 N. C., 60, 197 S. E., 151.

(c) Other conditions favorable, the municipality may appropriate for building and maintaining the facility out of funds on hand not obligated to other uses.   *Goswick v. Durham, supra; Adams v. Durham,* 189 N. C., 232, 126 S. E., 611; *Nash v. Monroe,* 198 N. C., 306, 151 S. E., 634; *Mewborn v. Kinston,* 199 N. C., 72, 154 S. E., 76; *Burleson v. Board of Aldermen,* 200 N. C., 30, 156 S. E., 241.

(d) The municipal authority to construct, maintain and operate such airport may be confided to a municipal corporate authority created for that purpose by appropriate legislative action.   *Turner v. Reidsville, supra; City of Reidsville v. Commissioners, supra; Brockenbrough v. Commissioners,* 134 N. C., 1, 17, 46 S. E., 28; *Webb v. Port Commission,* 205 N. C., 663, 172 S. E., 377; *Wells v. Housing Authority,* 213 N. C., 744, 197 S. E., 693; *Cox v. City of Kinston,* 217 N. C., 391, 8 S. E. (2d), 252; *Mallard v. Housing Authority,* 221 N. C., 334, 20 S. E. (2d), 281; *Benjamin v. Housing Authority,* 198 S. C., 79, 15 S. E. (2d), 737.

(e) The county and cities concerned may lawfully join in such an enterprise if each of them is benefited by it. G. S., 63-4.

It is within the stipulated facts that the several appropriations made to the plaintiff are out of funds now in their hands, in each case, not derived from *ad valorem* taxes, but mainly from the sale of property, and it is not disputed that the funds are free from other specified purpose or legal commitment. There is nothing in the record itself to indicate otherwise, and we are bound by the stipulation on which the court below acted. In this situation no question of credit or taxation in violation of Article VII, section 7, is involved, and the prohibition constituting the *ratio decidendi* in *Sing v. Charlotte, supra,* does not apply.

The main objections which have been urged are that the several acts of the Legislature mentioned in the statement have created in the plaintiff a municipal corporation, to all intents and purposes independent and distinct from the county or municipalities it is intended to serve, and have so insulated it as to deprive the municipalities of the legal right to contribute to it under the guise of appropriating money for a public purpose; that the statute fails to give to the municipalities an adequate control of the Airport Authority; and that there is no express language in the Act creating the Authority an agent of the cities of Greensboro and High Point.

These objections are similar in aspect, and the answer to each of them lies in the broad scope of legislative discretion in statutes dealing with towns and cities, and in the actual recognition given the plaintiff Airport Authority as an agency of these municipalities and the authority given to Guilford County, Greensboro and High Point to deal with it in the several pertinent statutes made a part of the agreed facts. Chapter 98, Public-Local Laws of 1941, as amended by chapter 601, Session Laws of 1943, secs. 1 and 2; chapter 206, Session Laws of 1945.

Our Constitution does not operate as a grant, but as a limitation on the legislative power; and all powers not withdrawn through its restrictions are reserved to the people to be exercised by their representatives in the Legislature. *Yarborough v. N. C. Park Commission,* 196 N. C., 284, 145 S. E., 563. Since the prohibition of Article VII, sec. 7, of the Constitution is concededly not applicable to the present case, and in the absence of other constitutional restrictions, the subjects dealt with in the statutes under review fall within these reserved powers. We have no power to review a statute with respect to its political propriety as long as it is within the legislative discretion and has a reasonable relation to the end sought to be accomplished.

"Public Purpose" as we conceive the term to imply, when used in connection with the expenditure of municipal funds from the public

treasury, refers to such public purpose within the frame of governmental and proprietary power given to the particular municipality, to be exercised for the benefit, welfare and protection of its inhabitants and others coming within the municipal care. It involves reasonable connection with the convenience and necessity of the particular municipality whose aid is extended in its promotion.

If the appropriations made by the county and municipalities were indeed made, as a mere gift, to another political subdivision—another town or city of an independent governmental capacity, incapable of performing the public service which has become the felt need of the contributing municipality, the authority for such a donation might be questioned. But that situation is not before us. The plaintiff Airport Authority is neither a private corporation nor a political territorial subdivision. It is a *quasi*-municipal corporation of a type known since *McCulloch v. Maryland,* 4 Wheat., 316, and commonly used in this and other states to perform ancillary functions in government more easily and perfectly by devoting to them, because of their character, special personnel, skill and care. The legality of the appropriations to its support as involving a public purpose does not depend on the strict propriety of the terms of the creating act as a piece of ideal legislation, as much as it does upon the nearness or remoteness of the benefits enjoyed by the municipality through its operation with respect to the public service sought to be promoted. If the adjuvant corporation is invested with the power and is given the capacity to meet the demand, the legal requirements justifying aid from the public funds have been met. The fact that other and even greater powers have been given to the corporation than those absolutely necessary to the performance of the particular function is, as we have said, a matter within the legislative discretion. Furthermore, the reciprocal and functional relation between the Greensboro-High Point Airport Authority and the cities whose name it bears is outstanding. Proximity to these large communities, which are in key positions with respect to trade and transportation over a wide area, is as essential to the existence of the airport as the latter is to the progress and expansion of the cities themselves and the convenience of their inhabitants and those who communicate or deal with them.

In considering questions concerning the powers conferred on the *quasi*-municipal corporation and the control over it exercised by the municipality with which it is connected, it must be remembered that counties, cities and towns derive practically all their powers from the Legislature, through appropriate statutory law, rather than constitutional grants; and the Legislature, in implementing their functions or in creating a separate corporate agency to serve a particular governmental purpose, is not bound by the limitations of the general statute under which the

municipalities are formed or the special charters and laws delimiting their authority. It may give to these specially created agencies such powers and call upon them to perform such functions as the Legislature may deem best. *Brockenbrough v. Commissioners, supra.*

If we give full faith and credit to this power of the Legislature over municipal government, it is clear that we must think in terms of *agencies* rather than of *agents* when we speak of ancillary corporations which have been given charge of particular municipal public functions. The powers given to such corporations are direct and legislative, and not conferred by municipal resolution unless the statute should so direct. They are, in fact, agents of the law. In so far as constitutional restrictions are concerned, the General Assembly may distribute the functions of a municipality as it may deem best, the only limitation being its own sound judgment in creating a unified and efficient government. By the exercise of the same sound judgment and legislative discretion, it may, as it has attempted here to do, create a more or less autonomous agency, giving to the municipality only such control as it may consider advisable where the particular functions to be performed involve great detail and complexity, and demand close attention and skilled personnel. Perhaps in no other way could continuity and efficiency in the service be secured against political changes and petty directives.

In the type of corporation we have here control is ordinarily given, as it is here, by a representative directorate chosen by the governing bodies concerned, with such other provisions in the Act as will insure to the municipality the integrity of the operations and their continued employment in aid of the public purpose being promoted. *Webb v. Port Commission, supra; Wells v. Housing Authority, supra.*

The public statute, G. S., 63-4, permitting the three municipalities concerned to act jointly is not repealed or modified, or its authority in any way affected by the supplementary acts under which the purpose and policy of the public statute are carried out in the creation of a single Airport Authority to serve all three municipalities—obviously the only way in which it could be done.

The record itself constitutes a refutation of the theory that the agency thus created is an independent corporation, incapable of performing the public service required of it with respect to Greensboro and High Point, or that it is not committed by the pertinent statutes to supply the public need or convenience thus conceded to be a public purpose, and to the accomplishment of which the municipalities are permitted to spend public money. The airport itself is conveniently located between these populous cities, and they are the immediate beneficiaries of its operation, in so far as the convenience of their citizens is concerned, with respect to mail, freight and passenger service, in all of which the record shows an amaz-

ing amount of "on" and "off" traffic flowing to and from these cities, and only remotely to others. In connection with the performance of these services Greensboro and High Point are given, with Guilford County, joint control of the directorate by proportional appointment of its members. In this situation the contention that the Airport Authority is not committed by law to this service and is not an agency of these two cities, and that their contributions are mere gifts to an independent corporation not charged with carrying out any public purpose or any municipal function in which they are directly interested, would hardly be accepted as sound.

In *Briggs v. Raleigh,* 195 N. C., 223, the only possible community or municipal benefit to the City of Raleigh discernible in the transaction whereby $75,000 to $100,000 was donated to the fair grounds enterprise, and approved by the Court, other than the satisfaction which comes from a benevolent action, was the fact that it increased the city's trade or put its inhabitants nearer the educational enterprise.

The appropriation which a municipality may make to an agency of this sort on the ground that it is a public purpose is not a loan and is not intended to be a lien on its assets. *Webb v. Port Commission, supra; Wells v. Housing Authority, supra; Mallard v. Housing Authority, supra; Briggs v. Raleigh, supra,* and cases cited *infra.* Disposition of its property upon liquidation, which is not expected to occur, is a legislative care when the necessity arises.

It is pointed out that the Airport Act expressly declares the Authority to be an agent of Guilford County, but makes no such declaration as to Greensboro and High Point. The question of agency, however, must be determined from the entire Act and from the actual relation of the Airport Authority to the municipal functions of these two cities therein established, and the authority given the cities to deal with it, rather than from any declaration in the Act, especially one which is obviously not intended to be exclusive. Perusal of the Act leaves no doubt that the Legislature intended that the Airport Authority should perform for Greensboro and High Point all things necessary for the construction, maintenance and management of airport facilities, which they each might have done independently, but are by public statute (G. S., 63-4) permitted to do jointly. The Act, as we have seen, gives these two cities participation in the selection of members of the commission, or directors, and their replacement and succession—the right to be exercised by each city independently of any other authority, and makes frequent reference to the duties which the Airport Authority is to perform for these cities. In section 5—and this should be decisive of the point raised—the Act, as amended, gives to Greensboro and High Point full authority to deal with the plaintiff Airport Authority in language which cannot be con-

strued otherwise than an acceptance and recognition of the challenged agency; indeed, more than that, it does in intent and in effect establish that relationship by direct authority to these municipalities to give to the agency material and substantial support. See section 5, *supra.*

In this connection the whole legislation on the subject must be considered *in pari materia,* and the provisions of chapter 206, Session Laws of 1945, cannot be ignored. This chapter gives complete and express recognition of the plaintiff Authority as the agency of Greensboro and High Point, as well as of Guilford County; and the authority is given each municipality to deal with it, and upon a plebiscite to lend credit and to issue bonds and raise money for its support. The statutes creating the agency (chapter 98, Public-Local Laws of 1941, and chapter 601, Session Laws of 1943) are cited in chapter 206, *supra,* and their authority is there expressly preserved. The significance of this later statute lies in the fact that it does not in itself create the agency, but recognizes its creation under the former statutes and the purpose of its creation, *and authorizes these municipalities to deal with it and give it aid.* Since these cities are given authority to raise money by taxation and expend it in aid of plaintiff agency, the authority is adequate to appropriate for that purpose from surplus and uncommitted funds already on hand. *Adams v. Durham, supra.* It is true they are not proceeding under this statute to raise the funds, but that does not diminish the authority given to deal with the agency when they have the funds which may be applied.

Supplementing what has been said about the complete control of counties, cities and towns by the Legislature from which their powers are derived, we might refer to some of the "set-ups" which have met our approval and compare them with similar features of the act under review.

The Morehead Port Commission was created by chapter 75, Private Laws of 1933, and the act of creation was reviewed in *Webb v. Port Commission, supra.* Perusal of the Act—which is largely recapitulated in the case cited, will show that there is no control whatever of the Port Commission given to the governing body of Morehead City except that given through the appointment of members of the Commission; and yet the Court upheld the provision permitting financial aid to be given by Morehead City on the principle of its interest in the public purpose being served.

By chapter 271, Private Laws of 1899, a corporation known as "The Board of Water Commissioners of the City of Charlotte" was created to carry on that function for the city. Apart from the appointment of the members of this board by the Aldermen of Charlotte, there is not a vestige of control given to the city, unless the privilege of locating hydrants and paying for their installation and upkeep could be so con-

sidered. Not only did it take away all the powers of the City Board of Aldermen in the premises and give them to the newly created corporation, but the statute provides that the acts of the Water Commissioners shall be deemed the acts of the municipality. The law was amended by chapter 196, Private Laws of 1903, and came under review here in *Brockenbrough v. Charlotte, supra.* Commenting on this law in the cited case, *Justice Connor,* speaking for the Court, says:

"It is clear that the Legislature may, in aid of municipal government, *or for the purpose of discharging any municipal functions,* or for any proper purpose, create municipal boards and confer upon them such powers and duties as in its judgment may seem best." (Italics ours.)

In other instances the Legislature has gone further and has completely committed municipal functions to a legislative board or corporation without any control of the governing body of the county, and yet the county is required to furnish the finances. *Huneycutt v. Comrs.,* 182 N. C., 319, 109 S. E., 4, dealt with a situation of that kind and found abundant support for its approval in the cases cited on p. 321.

The municipalities represented here have attempted to appropriate funds to a public purpose served by a statutory agency in whose appointment they participate and whose benefits are laid upon their threshold. The technical objections to the form of the statute do not outweigh the presence of that reality which the law and the decided cases have always sought as the determining factor—the relation of the municipality to the public purpose to which it lends its support—the practical satisfaction of the municipal need felt by its inhabitants. If the statute creating the Airport Authority has defects which merit legislative or judicial attention, they are not before us on this appeal.

Unquestionably the immediate future of civil aviation will bring to us results undreamed of; transportation of mail, passengers and freight will reach proportions hitherto thought impossible. Already we have in this method of travel and transportation a rival of all other means now employed; and an opportunity which these cities, amongst our largest and most prosperous, can no more afford to lose than we can afford to deny to them except upon cogent reasons.

In affirming *Hesse v. Rath,* 224 App. Div., 344, 230 N. Y. Supp., 676, 249 N. Y., 436, 164 N. E., 342, the Court, speaking through *Cardozo, Ch. J.,* says:

"A city acts for city purposes when it builds a dock or a bridge or a subway. . . . Its purpose is not different when it builds an airport. . . . Aviation is to-day an established method of transportation. The future, even the near future, will make it still more general. The city that is without the foresight to build the ports for the new traffic may soon be left behind in the race of competition. Chalcedon was called

the city of the blind, because its founders rejected the nobler site of Byzantium lying at their feet. The need for vision of the future in the governance of cities has not lessened with the years. The dweller within the gates, even more than the stranger from afar, will pay the price of blindness."

We have been cited no provision of the Constitution, and we find nothing in the statutes, which would justify us in raising a judicial bar to the appropriations which the municipalities have sought to make for the accomplishment of this widely recognized public purpose, or justify reversal of the judgment entered in the Superior Court. The defendants are acting in a ministerial capacity and are amenable to the writs demanded.

The judgment is

Affirmed.

BARNHILL, J., concurring in part and dissenting in part: I concur in the conclusion that the judgment below, in so far as it requires the treasurer of Guilford County to pay to plaintiff the amount appropriated to its use by the commissioners of Guilford County, must be affirmed. In my opinion, on this record, the appropriations made by Greensboro and High Point are nothing more or less than gifts or grants in aid which these municipalities have no legal right to make. For that reason plaintiff is not entitled thereto. As to them the judgment should be reversed.

The plaintiff corporation was created by and draws its authority from a Special Act of the Legislature, ch. 98, Public-Local Laws 1941. Hence the general statute, G. S., 63-4, which authorizes counties and cities jointly to establish and maintain an airport is not pertinent and has no bearing on the question here presented. About the other postulates initially listed in the majority opinion, in so far as they may affect decision here, there is no divergence of opinion.

It is conceded in the majority opinion that a municipality may expend its funds only for a public purpose and that "public purpose" when used in connection with the expenditure of municipal funds refers to such public purpose within the frame of governmental and proprietary powers given to the particular municipality, to be exercised for the benefit, welfare and protection of its inhabitants and others coming within the municipal care.

Thus we seem to be agreed that the appropriation of public money is permissible only when it is within the functional framework and in furtherance of the governmental or proprietary activities of the particular municipality and that to constitute a public purpose the objective must be directly connected with the local government and tend to pro-

AIRPORT AUTHORITY v. JOHNSON.

mote the general welfare of the residents of the corporate community. *Williamson v. High Point,* 213 N. C., 96, 195 S. E., 90; *Davis v. City of Taylor,* 67 S. W. (2d), 103, 123 Tex., 39. That is, it must be a corporate purpose directly connected with the local government and having for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity or contentment of the inhabitants or residents within the political division from whence the revenue for its support is derived. *Green v. Frazier,* 176 N. W., 11, 44 N. D., 395; *Lott v. City of Orlando,* 196 So., 313, 142 Fla., 338; *Platte Valley Public Power and Irrigation Dist. v. Lincoln County,* 14 N. W. (2d), 202.

So then, as we are agreed upon the applicable general principles of law, the legality of the appropriations made by High Point and Greensboro for the benefit of plaintiff is to be determined by the facts appearing in this particular case.

Briefly the pertinent facts are these:

1. The 1941 Legislature, by Special Act, ch. 98, Public-Local Laws 1941, created the plaintiff corporation as an instrumentality and agent of Guilford County. As such agent or instrumentality it was given power to acquire property and maintain, operate, and regulate airfields within Guilford County, and it was required to make detailed annual reports to the county board of commissioners.

2. The Special Act provides for a governing board composed of five citizens of Guilford County. The board of commissioners of Guilford County was empowered to select three members of said board, one from High Point, one from Greensboro, and one from the county at large. Greensboro and High Point are granted the privilege of selecting one each.

3. At the time of the adoption of said Act and thereafter Guilford County owned and operated an airport within the county. The board of commissioners of said county in April, 1942, "decided to carry out the provisions of said Act and activated said Greensboro-High Point Airport Authority." To that end the county conveyed all its airport property to plaintiff authority and thereafter operated its airport facilities through the plaintiff, its corporate instrumentality and agent.

4. In 1943 the 1941 Special Act was amended. Ch. 601, Session Laws 1943. By said amendment plaintiff was (1) granted all the powers given to counties or municipalities by general statutes relating to airports, (2) authorized, *with the consent of Guilford County,* to issue notes, bonds, and other securities and to execute mortgages and deeds of conveyance, and (3) to deny to or withdraw from any other person or corporation the right to operate an airport within Guilford County. Thus Guilford was given a greater measure of control over the corporate activities of plaintiff.

5. Greensboro and High Point are cities within and are a part of Guilford County. As such they, together with the rest of Guilford, receive direct benefits from the operation of the airport. But it does not appear that either furnished any part of the property, real or personal, used by plaintiff in maintaining the airport facilities. They did not "join with" Guilford in activating plaintiff.

6. Neither city exercises any control over plaintiff. It may continue its operations or cease so to do and convey its property or liquidate its assets without let or hindrance from them; and in the event of liquidation they would have no claim to any part of its assets.

7. It is alleged in each complaint that plaintiff authority is the corporate instrumentality and agent of Guilford County. But it is not alleged or stipulated by the parties or found by the court that plaintiff is the instrumentality of either city.

So then, briefly stated, we have this situation. Guilford County, through a corporate agency is maintaining airport facilities in Guilford County. It furnished the necessary property and is making contributions toward its maintenance or enlargement. High Point and Greensboro each have appropriated funds to be paid to plaintiff to be used for capital improvements.

Is plaintiff as a matter of law entitled to the funds thus appropriated? The divergence of opinion arises here.

Under some circumstances a municipality may make a contribution to a wholly independent and unrelated corporation for a particular purpose such as to procure the location of some public institution within or near its bounds. *Briggs v. Raleigh,* 195 N. C., 223, 141 S. E., 597; Anno. 46 A. L. R., 679, 698, 737. Such occasions are rare—and this is not one of them. Ordinarily public money is expended in furtherance of governmental and proprietary objectives either directly by the municipal authorities or indirectly through corporate agencies.

We are agreed that the maintenance of an airport is a "public purpose" in which a municipality may engage for and in behalf of its citizens either directly or through the agency of an "adjuvant" corporation. So then, concededly, decision here rests squarely upon the question whether plaintiff is the instrumentality or agent of High Point and Greensboro. This is the crux of the case.

In answering this question in the affirmative the majority opinion reasons thus: Plaintiff is operating an airport in Guilford County which serves the residents of High Point and Greensboro. These cities have statutory authority to operate airports and they are mentioned "frequently" in the Special Act creating plaintiff. Therefore, although plaintiff, by express provisions of the Act creating it, is made the instrumentality and agent of Guilford County only, it is in fact also the

corporate agent of these two cities. It being their agent, they may appropriate funds for its support.

In my opinion the conclusion is a *non sequitur*. The Act under which plaintiff operates makes it the corporate agent of Guilford County. *Expressum facit cessare tacitum.*

The county alone exercises supervisory control. While the existence of the right of control in the principal or parent corporation is not an absolute essential, its existence in the one municipality to the exclusion of the others is significant. *Expressio unius est exclusio alterius.*

I readily concede that under G. S., 63-4, High Point or Greensboro, either separately or jointly with Guilford County, may acquire and maintain an airport and use nontax funds for that purpose without first submitting the question to the voters for their approval. The point is *they have not undertaken to do so.* When Guilford County elected to seek special legislative authority to operate its airport through a corporate agency it elected to act alone and not in co-operation with other municipalities.

Of course High Point and Greensboro receive direct benefits from the operation of the airport. They are component parts of the county which was created for the very purpose of serving its people, including those residing within the two cities. Any governmental or proprietary activity of the county naturally reacts to their advantage. But the mere fact the airport is an instrumentality of Guilford, is located near these two cities, and the county thus renders a service for them which they could provide for themselves does not make it their agent or warrant the conclusion that the operation of the airport is within the compass of the corporate activities of these cities or either of them.

When we adopt the majority view, read into the special statute an intent it does not express, and hold to the contrary, we in effect declare that every activity of a county constitutes a "public purpose" for each and every town or city within its bounds.

A municipality is not the giver of gifts. *Briggs v. Raleigh, supra.* Even with express legislative authority it cannot pay gifts or gratuities out of public funds or assume any function which is not within the compass of its own corporate activities or usual or necessary powers. *Brown v. Comrs.,* 223 N. C., 744, 20 S. E. (2d), 104; *Madry v. Scotland Neck,* 214 N. C., 461, 199 S. E., 618; *Williamson v. High Point, supra;* 38 Am. Jur., 85, sec. 395, and 91, sec. 399. It must confine itself to the business of government for which it was created and its proprietary powers are to be exercised primarily for the advantage of the compact community. *Asbury v. Albemarle,* 162 N. C., 247, 78 S. E., 146.

A public auditorium, *Adams v. Durham,* 189 N. C., 232, 126 S. E., 611, or a public library, *Westbrook v. Southern Pines,* 215 N. C., 20,

1 S. E. (2d), 95, within Greensboro is as to that municipality a public purpose. While High Point may maintain an auditorium or library for itself, I assume no one would seriously contend that it could appropriate funds in aid of such institution in Greensboro. It seems to me to be equally illogical to say that High Point and Greensboro can make a grant or gift to maintain the corporate agency of Guilford. When we so hold we go a full bowshot further than this or any other court has heretofore gone.

The cases cited in the majority opinion sustain the position that a municipality may act through a corporate agency, which is conceded. No one of them, however, has any bearing on the question of the legality of the proposed appropriations.

*Briggs v. Raleigh, supra,* is more nearly in point, but that case is easily distinguishable. There the appropriation or contribution was made to obtain the location of a public institution near the boundary of the city and comes within the principle enunciated in the line of decisions there cited. Anno. 46 A. L. R., 679, 698, 737.

The 1945 amendment, ch. 206, Session Laws 1945, is an enabling Act. Whether the Legislature may thus empower the cities named to lend their credit to and guarantee the obligations of the plaintiff is not before us for decision. It contains no provision which alters or attempts to alter the then existing status of plaintiff in its relation to these cities, and it expressly provides that nothing therein contained shall be construed to repeal any of the provisions of the 1941 Act, one of which makes plaintiff an agent of Guilford County.

Even if it be conceded that this amendment in effect authorizes Greensboro and High Point to adopt plaintiff as their instrumentality and agency the fact remains the plaintiff has not elected to so allege, and it is not so found or stipulated although expressly denied in the further answers.

As to High Point there is another serious question. It adopted a 1945-1946 budget in part as follows:

"Special appropriations are hereby made out of monies derived from the sale of properties and the amount appropriated to Greensboro-High Point Airport Authority is for construction of capital improvements and in the sum of $25,000."

Ordinarily cities obtain funds with which to buy property through taxation. When tax money is used to purchase property and the property is sold, the money received therefrom is in a legal sense derived from taxation. The conversion and reconversion do not change its essential nature as tax money.

The appropriation, as required by statute, G. S., 160-434, specifies the source of the money for its payment—proceeds from the sale of prop-

erty. It must be made, if at all, as directed. The parties stipulate: ". . . and the city of High Point has on hand funds not derived from *ad valorem* taxes *as aforesaid* with which to pay the aforesaid appropriation."

Is this a stipulation of fact that the property sold was not purchased with tax money, or an erroneous conclusion that proceeds from the sale of property which was acquired through taxation are not derived from *ad valorem* taxes? It is not clear the parties meant the first. It would seem to be the latter. In any event it is left in serious doubt and for that reason plaintiff has not shown a clear legal right to this appropriation.

In filing this opinion I have sought merely to state the reasons why I cannot concur in the conclusion of the majority. In the light of what I have said it has been thought advisable to amplify the majority opinion by way of reply and further argument. Even so, I have no desire to engage in a running debate. As I have expressed my understanding of the law as applied to the facts appearing in this record I am content. I add only this:

(1) It is now contended that although plaintiff was created and activated under a special Act which defines and limits its authority we may apply the general statute.

(2) The majority opinion as originally drafted is bottomed on a fact which is neither alleged in the complaints nor stipulated in the agreed facts, *but which is expressly denied in the answers.* To warrant relief in a *mandamus* proceeding there must be allegation and proof or admission sufficient to disclose a clear legal right to the relief demanded. Here it is granted on a fact which is specifically denied and unrefuted by allegation or finding of fact.

(3) Now it is said that we are dealing with agencies and not agents, and that plaintiff is an agency which "serves the convenience" of Greensboro and High Point, and this is sufficient to justify and authorize the appropriations. This, to my mind, is notable for its novelty.

(4) Neither the financial condition of plaintiff nor the rosy future of aviation, separately or in combination, justifies the appropriations.

(5) In *Webb v. Port Commission* the right of Morehead City to make contribution toward the support of the Port Commission was not at issue. *Brockenbrough v. Charlotte* is similarly distinguishable. The other authorities cited are so different factually they have no application here.

It may be that upon proper allegation and finding the 1945 amendment, ch. 206, Session Laws 1945, could be given an intent and meaning that would support an affirmance. Be that as it may, on this record the plaintiff, in my opinion, has failed to show a clear legal right to the

relief demanded as against Greensboro and High Point. Hence I vote to affirm the judgment in the case against the treasurer of Guilford County and to reverse as to the treasurers of High Point and Greensboro.

The further reformation of the majority opinion comes so late it leaves me no time within which to make this dissent conform to its outline without causing undue delay in final decision. I must rest content with its present form.

WINBORNE, J., joins in this opinion.

DENNY, J., concurring: The Greensboro-High Point Airport Authority was created as an agency of Guilford County by chapter 98 of the Public-Local Laws of 1941. The agency was created for the purpose of operating and maintaining an airport formerly owned and operated by Guilford County, which airport is located about equidistant from Greensboro and High Point. The corporation or agency created by the above Act derives its powers from the Act and the amendments thereto, as well as from the general law. See section 9 of the Act set out in the majority opinion. This fact, however, does not prevent the operation, expansion and maintenance of the airport by such agency from being for a public purpose, as declared by the general law. G. S., 63-5. *Turner v. Reidsville,* 224 N. C., 42, 29 S. E. (2d), 211; *Reidsville v. Slade,* 224 N. C., 48, 29 S. E. (2d), 215.

While strictly speaking the Greensboro-High Point Airport Authority is an agency of Guilford County, it operates and maintains an airport primarily for the benefit of the City of Greensboro and the City of High Point, and is authorized by the Act of its creation to contract with said municipalities. No doubt the primary purpose in creating the Airport Authority was to establish and maintain adequate airport facilities for these two cities, in lieu of the establishment of separate airports by the respective municipalities or for the establishment of a single airport under the general law by the joint action of the municipalities to be served. G. S., 63-4.

I think that chapter 206 of the Session Laws of 1945, authorizes the City of High Point, the City of Greensboro and Guilford County to contribute to the support, expansion and maintenance of the Greensboro-High Point Airport, now operated by the Airport Authority. The governing boards of the respective municipalities named in this Act cannot levy an *ad valorem* tax for the support, expansion or maintenance of an airport, without a vote of the people. *Sing v. Charlotte,* 213 N. C., 60, 195 S. E., 271. This Act, however, provides that these respective municipalities "may levy an annual *ad valorem* tax for the promotion, purchase, operation, repair, maintenance, expansion or construction of

airports, airport facilities, equipment, buildings and parking areas in Guilford County, provided a majority of the qualified voters in the respective political subdivisions approve same at an election called and held for any or all of said purposes." The Act further authorizes the municipalities which are parties hereto, to enter into an agreement or contract with the Greensboro-High Point Airport Authority for receiving, administering and expending any funds obtained under authority of the Act. An election in which the qualified voters might approve the levy of an *ad valorem* tax for the purposes authorized in the Act, would not affect one way or the other the right of the respective governing boards to contract with the Greensboro-High Point Airport Authority relative to the expenditure of the tax funds. I think when the General Assembly authorized Greensboro, High Point and Guilford County to contract with the Greensboro-High Point Airport Authority for the expenditure of funds raised by *ad valorem* taxes, it gave these municipalities the power to contract with said Airport Authority for the development of the Greensboro-High Point Airport and to appropriate any unappropriated funds in the treasury of the respective political subdivisions for that purpose, provided such funds were derived from sources other than taxation.

In this jurisdiction a municipal hospital is held not to be a necessary governmental expense. Nevertheless, if a municipality has funds in its treasury, derived from sources other than taxation, such funds may be expended for the support and maintenance of a municipal hospital. *Nash v. Monroe,* 198 N. C., 306, 151 S. E., 634. A city may use funds on hand for a public purpose, without the approval of the voters, provided the funds were obtained from sources other than taxation. *Burleson v. Board of Aldermen,* 200 N. C., 30, 156 S. E., 241; *Mewborn v. Kinston,* 199 N. C., 72, 154 S. E., 76; *Adams v. Durham,* 189 N. C., 232, 126 S. E., 611.

It is stipulated that the funds appropriated by the respective municipalities which are parties hereto, were derived from sources other than taxation. We are bound by the record.

The imposition of a tax is not involved. The funds appropriated are already on hand and the expenditure thereof will impose no further liability on the respective municipalities. Moreover, the expenditure of the funds is restricted to capital improvements at the Greensboro-High Point Airport. This is in conformity with the provisions of the 1945 Act, which authorizes the municipalities and the Airport Authority to contract as to the expenditure of any sums received from the municipalities and expended by the Airport Authority. Therefore, I vote to affirm.